To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:
TUMOLO, Chairman,
Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to this honorable court with regard to the above-captioned petition for discipline.
PROCEDURAL HISTORY
A complaint was filed against respondent by [A] and [B] in December 1985.
A certified letter of inquiry was sent to respondent on February 14, 1986 outlining the alleged professional misconduct. (See exhibit P-13.) No response was received.
The letter of inquiry was resent by certified mail on June 5, 1987. (See exhibit P-14.)
On September 15, 1987 respondent answered the letter of inquiry. (See Exhibit P-15.)
In response to an investigative proceeding, the respondent voluntarily appeared at the Office of Disciplinary Counsel and executed an affidavit dated November 10, 1987, which in large part admitted his responsibility for the alleged disciplinary violations. (See exhibit P-16.)
Since the respondent both answered the letter of inquiry and executed the affidavit of November 10, 1987, and a supplemental affidavit of January 7, 1988 (see exhibit P-20), there is no question that he had notice of the pending disciplinary inquiry. But, the record shows that even before the filing of the petition for discipline respondent had no certain address where he could be reached.
*346 On April 25, 1988 a petition for discipline was filed. No personal service of this petition upon respondent was achieved. Rather, petitioner’s efforts at service were as follows:
(A) Visiting respondent’s last known address at [ ], to learn that [C] Auto Tags, the former occupant who apparently was receiving the respondent’s mail for him, had moved;
(B) Visiting the new address of [C] Auto Tags at [ ] and speaking with [C], who had been accepting mail for respondent, and who advised that respondent had not picked up his mail for months and was believed to have left town without leaving a forwarding address;
(C) Reviewing motor vehicle records to learn that the last registration address for respondent was [ ];
(D) Reviewing the records of the Pennsylvania Bureau of Motor Vehicles to learn that respondent was neither registered as a licensed driver nor the owner of a vehicle;
(E) Visiting the [ ], from which respondent had moved and left no forwarding address; and,
(F) Reviewing the records of the United States Post Office at the [ ] and [ ] branches to learn that respondent had left no forwarding address from [ ] nor his address at [ ]. (N.T. 12/20/88 at 49-51; exhibit P-26.)
A letter dated May 13, 1988 was sent by regular first-class United States mail to respondent at his last known address for the receipt of mail, which was [ ], requesting that respondent communicate with petitioner concerning a matter of personal importance. (Exhibit P-26.) No response was received.
Petitioner attempted to serve a copy of the petition for discipline upon respondent by forwarding a copy under cover of letter dated June 7, 1988 by *347 regular first class United States mail at his last known address of [ ]. (Exhibit P-27.) The copy of the petition for discipline and accompanying letter dated June 7, 1988, forwarded to respondent by regular first-class United States mail, was returned to petitioner by the post office as “attempted, not known.”
Petitioner also attempted to serve a copy of the petition for discipline upon respondent by forwarding a copy of said petition under cover of letter dated June 7, 1988 and sent to him by certified United States mail, return receipt requested, at his last known address of [ ] (Exhibit P-28.) The copy of the petition for discipline and accompanying letter dated June 7, 1988 forwarded to respondent by certified United States mail was returned to petitioner by the post office marked as “undeliverable as addressed — forwarding order expired,” and “return to sender, no forwarding order on file.”
The record shows numerous other attempts, beyond the requirements of the rules, to serve respondent, all of which proved fruitless. But since the petitioner complied with Rule of Disciplinary Enforcement 212 by addressing the petition for discipline to respondent at the last address he supplied in his registration statement the jurisdictional requirements of notice are satisfied.
A hearing was held on the petition for discipline before Hearing Committee [ ], and was presided over by members [ ] and [ ] since Chairperson [ ] was unavailable.
Respondent did not appear nor in any way participate in the hearing.
Subsequent to the hearing of December 20, 1988, petitioner again tried to locate the respondent both in Pennsylvania and Ohio. All efforts, as set out with particularity in the record, failed. However, the rule *348 on service was more than complied with by the Office of Disciplinary Counsel.
FINDINGS OF FACT
The board finds no reason to disturb, and in fact adopts, the findings of fact made by the hearing committee as follows:
(1) Respondent, [ ], was admitted to practice law in the Commonwealth of Pennsylvania on or about November 1, 1979. (Exhibit P-18.)
(2) The last attorney registration statement filed by respondent was for the year 1986-87 and was endorsed by respondent on March 14, 1987. (Exhibit P-18.)
(3) The business address furnished by respondent in his last attorney registration statement for his office was at [ ] and respondent’s last residential address was [ ]. (Exhibit P-18.)
(4) As of April 28, 1988 respondent was on inactive status with regard to his ability to practice law in the Commonwealth of Pennsylvania pursuant to an order of the Supreme Court of March 29, 1988. (Exhibit P-18.)
(5) Respondent was retained by [A] and [B] on May 30, 1984 to represent them in matters pertaining to the estate of their mother, [D], who had died testate in April 1984. (N.T. 12/20/88 at 17-8, 33; exhibit P-16.)
(6) It was agreed between [A] and [B] and respondent that he would take the actions necessary to conclude their mother’s estate and to assist in handling matters arising out of [D’s] home ownership. (N.T. 12/20/88 at 19-21, 33-4; exhibit P-2.)
*349 (7) [A] and [B] had agreed to pay respondent a fee of $500 for his services regarding the estate and related matters. (N.T. 12/20/88 at 21-2, 34-5; exhibit P-2.)
(8) [A] and [B] made payments to respondent for fees, expenses and costs related to handling the estate, totalling $2,838.52, the last of which payments was made on November 5, 1984. (N.T. 12/20/88 at 22-3, 34-5; exhibit P-8.)
(9) Respondent admits to and acknowledges receipt of the monies paid him by [A] and [B]. (Exhibit P-16.)
(10) In the months between June and October 1984 respondent did take some actions pursuant to his agreement to represent [A] and [B] including the payment of a filing fee with the Register of Wills in the amount of $175. (Exhibit P-39.)
(11) [A] and [B] heard nothing further from respondent after they made the last payment to him on November 5, 1984. (N.T. 12/20/88 at 35.)
(12) Respondent did not file an inventory required by the Pennsylvania Probate, Estates and Fiduciaries Code within three months of [A’s] appointment as personal representative. (N.T. 12/20/88 at 24-5, 35-9, 44; exhibit P-39.)
(13) Respondent did not file the inheritance tax returns within nine months of the death of [D] as required by the Tax Code.
(14) [A] and [B] first learned that there was a problem with the estate when they received a letter dated August 9, 1985 from the Pennsylvania State Department of Revenue stating that no inheritance tax return had been filed for the estate and that [A] could be personally subject to a penalty of 25 percent of the tax or a $1,000 fine for such failure to file. (N.T. 12/20/88 at 23-4, 35-6; exhibit P-9.)
*350 (15) Upon receipt of the letter from the Department of Revenue (exhibit P-9), [A] attempted to locate respondent but was unsuccessful.
(16) With the assistance of the Department of Revenue, [A] completed an inheritance tax return, which was then filed with the Department of Revenue. (N.T. 12/20/88 at 38-9; exhibits P-35 and P-39.)
(17) The inheritance tax return filed by [A] on August 13, 1985 showed that the estate owed a tax in the amount of $1,651.79, without consideration of any interest or penalties that might also be due. (Exhibits P-10, P-35 and P-39.)
(18) [A] and [B] were able to arrange for payment of the inheritance taxes due upon the estate by making monthly payments of $150 for 12 months and an additional payment of $92.22, from September 1985 through to October 1986. (N.T. 12/20/88 at 25-6, 37-40, 45-5; exhibits P-11, P-37, P-38 and P-39.)
(19) The total amount paid by [A] and [B] to the Department of Revenue for the inheritance tax was $1,892.22, which included $240.43 in interest. (N.T. 12/20/88 at 45-6; exhibits P-10, P-11, P-37, P-38 and P-39.)
(20) Another attorney had to be retained to conclude all outstanding matters pertaining to the estate of [D], including transferring title of the estate realty to the heirs. (N.T. 12/20/88 at 43-4.)
(21) After the initial complaint was made to petitioner, a letter of inquiry was sent to respondent and he acknowledged receipt by hand-delivering a response to petitioner’s office. Subsequently, he signed an affidavit in lieu of an investigatory hearing. (Exhibit P-15.)
(22) [A] and [B] filed a claim against respondent with the Pennsylvania Client Security Fund on *351 January 24, 1986, and were compensated in the amount of $2,138.58. (N.T. 12/20/88 at 53-4; exhibit P-12.)
(23) Under cover of letter dated September 25, 1987 and hand-delivered to the office of the Client Security Fund, respondent made restitution by cashier’s check in the amount of $2,138.58. (N.T. 12/20/88 at 57.)
(24) In his affidavit on November 10, 1987, respondent admitted to the following:
(A) That he was retained in May 1984 by [A] and [B]to represent them in a matter concerning the estate of their mother;
(B) That over a period of time [A] and [B] paid respondent the sum of $2,138.58 for the purposes of paying taxes owed by the estate;
(C) That respondent could not locate any records of his representation of [A] and [B] or the estate of [D];
(D) That during the period of May 1984 through November 1987, respondent did not maintain any bank account for the purpose of escrowing or holding the client funds;
(E) That respondent has no recollection as to the whereabouts of the funds nor does he know what happened to the monies paid by [A] regarding his representation of [A] and [B] in the estate matter. (Exhibit P-16.)
(25) Respondent did not deposit the money paid him by [A] and [B] to be used to pay taxes and other expenses associated with the handling of the estate, in any bank or financial institution account designated for purposes of escrow. (Exhibit P-16.)
(26) The petition for discipline was filed in this matter on April 25, 1988. (Exhibit P-28.)
(27) Petitioner made extensive efforts to effectuate personal service of the petition for discipline *352 upon respondent, but when these efforts failed, service was made by certified letter to respondent’s last known address and by sending a copy by regular mail. (N.T. 12/20/88 at 49-51; exhibit P-26.)
(28) Petitioner has complied with the requirements of Pennsylvania Rule of Disciplinary Enforcement 212 for effectuating substituted service upon respondent. That rule states: In the event a respondent-attorney cannot be located and personally served with notices required under these rules, such notices may be served upon the respondent-attorney by addressing them to the address furnished by the respondent-attorney in the last registration statement filed by such person in accordance with Enforcement Rule 219(d).
(29) Additional efforts were made to notify and advise respondent of the hearing but to no avail.
(30) Respondent commingled the sum of $2,338.58 paid him by [A] and [B] for the purpose of paying taxes and other expenses related to the handling of their estate matter.
(31) Respondent failed to maintain an identifiable bank account at any financial institution for the purpose of holding client funds.
(32) As a result of the acts or omissions by respondent, [A] and [B] have had to expend the additional sum of $1,090.43 in order to conclude the matters for which respondent had been retained. (N.T. 12/20/88 at 45-6.)
CONCLUSIONS OF LAW
The board finds that based on the facts, respondent is liable for violation of the following Disciplinary Rules of the Code of Professional Responsibility:
*353 (A) D.R. 1-102(A)(4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;
(B) D.R. 1-102(A)(6), which prohibits an attorney frorfi engaging in conduct which adversely reflects on his fitness to practice law;
(C) D.R. 6-101(A)(3), which prohibits an attorney from neglecting a legal matter entrusted to him;
(D) D.R. 7-101(A)(l), which prohibits an attorney from intentionally failing to seek the lawful objectives of a client through reasonably available means permitted by law and disciplinary rules;
(E) D.R. 7-101(A)(2), which prohibits an attorney from intentionally failing to carry out a contract of employment entered into with a client for professional services;
(F) D.R. 7-101(A)(3), which prohibits an attorney from intentionally prejudicing or damaging a client during the course of the professional relationship;
(G) D.R. 9-102(A), which requires that all funds of clients paid to an attorney, except for advances for costs and expenses, be kept in identifiable bank accounts in the state in which the attorneys5 office is located, and that no funds belonging to the attorney shall be deposited therein except for funds sufficient to pay bank charges and funds belonging in part to the client and in part to the attorney; and,
(H) D.R. 9-102(B)(4), which requires an attorney to promptly pay or deliver to a client as requested by the client funds, securities, or other properties in the lawyer’s possession which the client is entitled receive.
The board finds that there is no appropriate evidence to support a violation of the following charges, and finds that they should be dismissed:
(A) D.R. 2-110(A)(2), which prohibits an attorney from withdrawing from employment until he has *354 taken reasonable steps to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with the applicable laws and rules;
(B) D.R. 2-110(A)(3), which requires an attorney who withdraws from employment to refund promptly any part of a fee paid in advance that has not been earned.
DISCUSSION
Simply taking respondent’s admissions in his affidavits, he received the client’s funds which were directed for specific disposition to third parties, and the disposition was never made. Further, by his affidavits and reply letter to disciplinary counsel the respondent admits he cannot account for the funds. Obviously, this conduct constitutes an unlawful removal of money that does not belong to the attorney, an unlawful failure to segregate that money, and an unlawful inability to account for the funds. See Office of Disciplinary Counsel v. Lucarini, 504 Pa. 271, 472 A.2d 186 (1983), and Office of Disciplinary Counsel v. Knepp, 497 Pa. 396, 441 A.2d 1197 (1982).
This conduct reflects adversely on respondent’s fitness to practice law. Office of Disciplinary Counsel v. Ewing, 496 Pa. 35, 436 A.2d 139 (1981).
Although the record demonstrates some actions early on in resolving this estate matter, nothing was done after November 1984. The complainants were notified by the Inheritance Tax Department, and thereafter moved to resolve their own legal problems, even though they had paid the respondent to accomplish the same. Needless to say, there is a *355 violation of the rules prohibiting neglect of a client’s legal matter. With respondent failing to appear to present any excuse, we must agree that petitioner met its burden also with regard to intentionally failing to carry out the employment contract and seek the client’s lawful objectives.
Precedent repeatedly shows that whenever there is an unauthorized removal of client funds by the attorney, there will be some form of public discipline recommended, which will vary depending on the aggravating or mitigating circumstances. See In re Anonymous No. 132 D.B. 88, 7 D.&C. 4th 331 (1990), and the authorities cited therein. Mitigation is shown in the repayment to the Pennsylvania Client Security Fund of the client losses. However, substantial aggravation is found in the respondent making himself unavailable in the jurisdiction to which he is admitted to practice law, when he knew that serious allegations of professional misconduct were alleged against him. We can only conclude that respondent has consciously failed to do anything on his own to preserve his license.
Accordingly, when combining the serious disciplinary infractions proved, with respondent’s own failure to participate in the process necessary to properly assess his present standing to practice law, the board will recommend that respondent be disbarred.
RECOMMENDATION
The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the respondent be disbarred. It is further recommended that the costs of these proceedings be imposed upon the respondent.
*356 Ms. Heh and Mr. Eckell did not participate in the adjudication of this matter.
ORDER
And now, December 12, 1990, upon consideration of the report and recommendation of the Disciplinary Board dated August 28, 1990, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of five years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.
Mr. Justice McDermott did not participate in this matter.
Mr. Justice Larsen dissents and would enter an order of disbarment.