**In re Anonymous No. 110 D.B. 89**

Disciplinary Board Docket no. 110 D.B. 89.

574

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KELLER, *Member,* October 9, 1990—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations regarding the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On October 18, 1989, the Office of Disciplinary Counsel filed a petition for discipline of respondent. The petition alleged numerous Disciplinary and Professional Conduct Rule violations, stemming from respondent's mismanagement of an estate matter.

Respondent did not file an answer to the petition for discipline. A hearing on the matter was held on February 14, 1990 before Hearing Committee [ ], which consisted of [ ]. On March 19, 1990, the Office of Disciplinary Counsel filed a brief to Hearing Committee [ ], requesting that respondent be disbarred from the practice of law. On May 31, 1990, the hearing committee filed its report on the matter, and recommended that respondent be disbarred. The matter was adjudicated at the August 1990 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We adopt the findings of fact contained in the report of the hearing committee, which are based on the stipulations of the parties, petitioner's exhibits, and the reasonable conclusions to be drawn therein.

(1) Petitioner, whose principal office is situated at Commerce Building, 300 N. Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of any attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement.

(2) Respondent was admitted to practice law in the Commonwealth of Pennsylvania on or about May 13, 1983. His office is located at [   ].

(3) Pursuant to the power granted by Pa.R.D.E. 207, petitioner brings against respondent charges of professional misconduct in violation of the Code of Professional Responsibility of Pennsylvania (former 204 Pa. Code Ch. 81) and of the Pennsylvania Rules of Professional Conduct. (204 Pa. Code Ch. 81)

(4) [A] (decedent), a resident of [   ], died intestate on January 1, 1984, survived only by her mother, [B].

(5) Pursuant to the intestacy laws, [B] is decedent's sole heir.

(6) Within a month of decedent's death, [B] retained respondent to assist her in all legal matters arising from decedent's death.

(7) Respondent undertook to act as both administrator of and attorney to the estate.

(8) On February 14, 1984, [B] executed a renunciation of her right to serve as administratrix in favor of respondent.

576

(9) [B] provided to respondent complete documentation and information concerning the assets and liabilities of the estate.

(10) The assets of the estate included, inter alia: two real properties, one in [ ] and one in [ ]; cash in bank accounts; a claim for termination pay due from the [ ] School District; a claim for a United States income tax refund; and an automobile.

(11) On February 21, 1984, respondent filed a petition for letters of administration, which was granted by the [ ] Register of Wills on that date.

(12) On February 21, 1984, respondent filed an inventory of the estate.

(13) The inventory of the estate was incomplete, in that respondent did not include therein the anticipated [ ] School District payment and federal tax refund.

(14) Respondent failed to advertise the grant of letters as required by 20 Pa.C.S. §3162.

(15) Respondent failed to act promptly to transfer the title to decedent's automobile to [B].

(16) Respondent did not obtain an outside appraisal of the [ ] real estate.

(17) On or about March 19, 1984, respondent opened checking account no. [ ] at [C] Bank, captioned "Estate of [A], deceased" (estate account).

(18) Respondent garnered the assets of the estate, including the following, and deposited the funds into the estate account:

| Date of Deposit | Amount | Asset |
|---|---|---|
| 03/19/84 | $ 2,027.88 | [D] Savings & Loan Accounts |
| 07/05/84 | 9,925.66 | School district term. payment |
| | 45.89 | [E], checking account |
| | 15.00 | [F] account |
| | 9.00 | Unknown |
| 07/31/84 | 3,336.00 | Federal income tax return |
| 08/23/84 | 59.98 | Source unknown |
| 09/20/84 | 347.50 | Source unknown |
| 04/17/85 | 29.40 | [G] refund |
| | $ 15,836.31 | Total |

(19) Respondent failed to advise [B] of his receipt of the School District payment and federal income tax refund.

(20) Respondent obtained the proceeds of an automobile property damage claim, in the amount of $300, which he did not deposit into the estate account.

(21) Respondent failed to file an amended inventory of the estate to reflect the receipt of the school district payment and the federal tax refund.

(22) From time to time, commencing in early 1984, [B] gave respondent bills which were estate obligations and requested that he pay them from the estate assets.

(23) Respondent failed to pay the bills. [B] continued to receive collection notices from estate creditors.

(24) Under cover of a letter dated April 11, 1984, [H] Life Insurance Company forwarded to [B] a check in the amount of $20,000, the proceeds of a life insurance policy held by decedent, of which [B] was the named beneficiary.

(25) [B] advised respondent of her receipt of said funds.

(26) Respondent falsely advised [B] that estate assets were insufficient to pay the obligations.

578

(27) [B] paid estate obligations from the proceeds of the insurance policy, including:

| Date | Amount | Payee |
|------|--------|-------|
| 5/4/84 | $2,600.00 | [I] Funeral Home |
| 5/4/84 | 133.59 | [J] Corp. |
| 5/4/84 | 586.15 | [K] |
| 5/4/84 | 716.45 | [L] |
| 5/4/84 | 33.03 | [M] |
| 5/4/84 | 59.59 | [N] |
| 5/4/84 | 35.81 | [O] |
| 5/4/84 | 74.97 | [P] |
| 6/29/84 | 88.40 | [I] Funeral Home |
| | $4,297.99 | Total |

(28) [B] advised respondent that she had paid such bills.

(29) Respondent failed to reimburse [B] for the bills from the estate assets.

(30) Respondent drew checks payable to himself on the estate account for attorney and administrator's fees, as follows, as annotated by him:

| Date Cleared | Amount | For |
|--------------|--------|-----|
| 3/21/84 | $ 500 | "Admin. and counselling fee" |
| 5/15/84 | 300 | "Legal fee" |
| 7/13/84 | 1,500 | "Admin. Fee" |
| 8/2/84 | 500 | "Admin." |
| | $2,800 | Total |

(31) By letter dated May 14, 1984, respondent:

(a) advised [B] that his fee for services as administrator would total $3,253, calculated upon varying percentages of the value of the assets, including real estate in [   ] and insurance proceeds which were not part of the probate estate;

(b) advised [B] that he had taken an advance fee of $500;

(c) asked [B] to remit the $2,753 balance to him.

(32) [B] did not send respondent the funds he requested.

(33) On May 15, 1984, respondent filed a United States income tax return for decedent for 1983, claiming a refund of $3,336.

(34) By letter dated May 21, 1984, [B] requested that respondent provide to her information relating to the estate funds.

(35) By letter dated June 4, 1984, respondent:

(a) provided to [B] information as to certain receipts and disbursements;

(b) stated that he would provide more detailed financial funds expended when he filed his final account; and

(c) advised that he anticipated a response from the "school board" soon.

(36) By letter dated June 9, 1984, [B] requested that respondent provide to her decedent's original birth certificate and her 1983 tax return.

(37) By letter dated June 14, 1984, respondent:

(a) forwarded those documents to [B];

(b) stated that almost everything required to close the estate was completed; and

(c) attributed the delay in closing the estate to circumstances beyond his control.

(38) The representations in that letter were false, in that respondent had not yet prepared and filed a Pennsylvania inheritance tax return or paid all estate obligations.

(39) Respondent made the following withdrawals from the estate account payable to himself or to a credit card account in his name in addition to those funds designated as attorney and administrator's fees:

| Date Cleared | Amount | Disposition |
|---|---|---|
| 6/20/84 | $200.00 | Deposited to or negotiated through respondent's personal checking account no. [ ] at [Q] Bank. |

| Date | Amount | Description |
|---|---|---|
| 6/28/84 | 100.00 | Payable to [Q] Bank for "payment a/c [ ]." |
| 8/2/84 | 1,487.25 | Deposited to or negotiated through respondent's personal checking account no. [ ] at [Q] Bank. |
| 10/04/84 | 844.02 | Payable to respondent's [P] account. |
| 11/15/84 | 5,000.00 | Deposited to or negotiated through respondent's personal checking account no. [ ] at [Q] Bank. |
| 1/29/85 | 3,000.00 | Deposited to or negotiated through respondent's personal checking account no. [ ] at [Q] Bank. |
| 5/21/85 | 950.00 | Payable to [Q] Bank for "a/c [ ]." |
| | $11,581.27 | Total |

(40) [Q] Bank account no. [ ] was respondent's checkloan account.

(41) The foregoing funds were utilized by respondent for his own benefit and not for the benefit of the Estate of [A] or [B].

(42) The foregoing withdrawals were made without the knowledge or consent of [B].

(43) The withdrawals constituted conversion of funds due to [B].

(44) Respondent failed to maintain complete records of his receipt and disbursement of estate funds.

(45) Respondent failed to account fully and accurately to [B] for the estate funds.

(46) Respondent did not file a deed transferring the [ ] real estate to [B] until December 4, 1984.

(47) Respondent failed to file a Pennsylvania inheritance tax return or to make any payment on account of the tax within nine months of date of death as required by law.

(48) By letter dated February 5, 1985, [B] forwarded documents to respondent and expressed her hope that the estate be settled shortly.

(49) On April 17, 1985, respondent filed a Pennsylvania Inheritance Tax return and paid $168.11 on account of tax.

(50) The return was inaccurate and incomplete, in that, inter alia:

(a) respondent failed to include therein assets and liabilities of the estate which were then known to him, including the [    ] School District payment and federal income tax refund;

(b) respondent included as an expense to the estate $500 for "miscellaneous," which was unverified and inaccurate.

(c) respondent listed an attorney's fee of $800 and an administrator's commission of $1,624, when in fact he had already withdrawn $2,800 in funds he designated as such fees, in addition to his undocumented withdrawals as set forth in paragraph 39 hereinabove.

(51) By letter dated May 6, 1985, respondent:

(a) forwarded to [B] a copy of the inheritance tax return and the deed to the [    ] real estate:

(b) stated that he had not completed transferring the car because he did not have proof of insurance; and

(c) stated that he was waiting for approval of the inheritance tax return to close out the estate.

(52) Thereafter, [B] retained the services of other counsel to assist her in obtaining from respondent the estate funds due to her.

(53) By letter dated June 27, 1985, [R], Esq., wrote respondent on behalf of [B] and requested that respondent file an account of the estate.

(54) By letter dated August 16, 1985, [R] followed up on that request.

(55) Respondent did not provide a written accounting to [R].

(56) [R] told [B] he did not receive any reply from respondent but he would be unable to continue to represent her.

(57) By notice of inheritance tax appraisement dated October 22, 1985, the Pennsylvania Department of Revenue notified respondent of tax due in the amount of $74.92, plus interest of $5.42.

(58) [B] then retained [S], Esq., an associate at [T] and [U], P.C.

(59) By letter dated June 9, 1986, [S]:

(a) advised respondent of his firm's representation of [B];

(b) stated that he understood that respondent was holding estate funds;

(c) advised that he had been directed to file a petition for accounting; and

(d) asked respondent to call him to attempt to resolve the matter.

(60) Respondent did not initially answer the letter, but thereafter, [S] was able to discuss the matter with respondent.

(61) Respondent did not tell [S] where the funds were held and told him it was not necessary to file an accounting.

(62) Respondent advised [S] that he would look into the matter and get back to him.

(63) [S] asked respondent to produce the financial records of the estate, but respondent failed to do so.

(64) By letter dated October 24, 1986, to respondent, [U], Esq., of [T] and [U]:

(a) noted respondent's failure to reveal in the inventory and inheritance tax return the funds received from the school district, the federal government, and [D] Bank; and

(b) demanded distribution of the funds due to [B] or an explanation within five days.

(65) Respondent failed to respond.

(66) On November 13, 1986, [S] filed in the [ ] Orphans' Court a petition or citation to compel respondent to file an account.

(67) By decree dated November 14, 1986, the Honorable [V] awarded a citation requiring respondent to show cause why he should not file an account of the estate, returnable December 18, 1986.

(68) Under cover of a letter dated November 20, 1986, the citation was served upon respondent.

(69) Respondent failed to respond to said petition and citation as directed.

(70) On January 2, 1987, [S] filed a petition for order directing respondent to file an account of his administration of the estate.

(71) By decree dated January 9, 1987, the Honorable [W] directed respondent to file an account of his administration of the estate within 30 days of personal service of the decree.

(72) Under cover of a letter dated January 13, 1987, the decree was served on respondent.

(73) Respondent failed to comply with said decree.

(74) On April 1, 1987, [S] filed a petition for citation requiring respondent to show cause why he should not be held in contempt for failing to file his account and a petition for citation for writ of attachment.

(75) By order dated April 6, 1987, Judge [W] awarded a citation, directed to respondent, to show cause why a writ of attachment should not issue, returnable May 8, 1987.

(76) On May 11, 1987, respondent filed an account of the estate.

(77) The account was inconsistent with the inheritance tax return and inaccurate and incomplete in various respects, including, inter alia:

(a) respondent listed termination pay from [   ] School District as $5,565.13, the actual amount was $9,925.76;

(b) respondent included as an asset the [   ] property which is not a Pennsylvania probate asset;

(c) respondent claimed credit for payment of property tax, which was actually paid by the mortgage company;

(d) respondent claimed credit for payment of debts, including the funeral bill, which were actually made by [B];

(e) respondent claimed unreceipted "administration expenses" of $667.12;

(f) respondent claimed attorney's fees of $2,300 and administrator's commission of $3,435.60, based upon respondent's erroneous inclusion of the [   ] real estate in the estate assets;

(g) respondent claimed a cash deficit in the amount of $2,122.53.

(78) By letter dated May 13, 1987, respondent forwarded a copy of the first and final account to [S] and demanded $240 in reimbursement of the alleged deficit balance in the account.

(79) The account was called for audit on September 21, 1987, at which time [S] filed his objections to the account.

(80) Respondent failed to appear on September 21, 1987.

(81) By letter dated September 21, 1987, Judge [V] advised respondent that the matter would be placed on the October deferred list and directed respondent to appear at that time.

(82) On October 5, 1987, respondent appeared in court late, after the list had been called, and was advised that the case had been placed on the November audit list.

(83) On November 2, respondent appeared at the audit list and the case was set for hearing on November 30, 1987.

(84) At the hearing on November 30, 1987, respondent failed to furnish to the court the audit papers required by 20 Pa.C.S. §3513 and [ ] Orphans' Court Rule [ ].

(85) At that hearing respondent failed to respond to demands that he account fully and accurately for estate funds or that he provide records of estate receipts and of disbursements he alleged he had made.

(86) At that hearing, under oath, respondent:

(a) falsely testified that he had held the estate funds in his "attorney account;"

(b) testified he had no records of said account;

(c) falsely testified that he had reimbursed [B] from estate funds for the estate obligations she had paid;

(d) falsely denied knowledge that [B] had received the $20,000 life insurance proceeds; and

(e) falsely testified that he had signed over the IRS refund and the school district refund directly to [B].

(87) On February 4, 1988, Judge [V] entered an adjudication which directed respondent to pay to [B] $14,001.53, representing restitution of excessive fees and commissions and unverified and/or falsified expenditures.

(88) Respondent failed to comply with said adjudication.

(89) On February 29, 1988, [S] filed a petition for order that respondent pay the award in the February 4 adjudication.

(90) By decree entered on March 2, 1988, respondent was ordered to pay the $14,001.53 within 10 days of personal service of the order.

(91) On March 8, 1988, respondent was served with the petition and decree.

(92) Respondent did not make payment of $14,001.53 by March 18, 1988.

(93) On or about April 1, 1988, respondent conveyed a $14,000 mortgage on his residence to [B] and a note to secure the obligation to pay pursuant to the adjudication.

(94) By letter of inquiry dated April 25, 1988, petitioner placed respondent upon notice of allegations of potential disciplinary violations relating to the above matter.

(95) By letter dated May 24, 1988, respondent answered the letter of inquiry.

(96) In his response, respondent falsely represented that he reimbursed [B] by money order for some of the bills she had paid.

(97) On May 24, 1988, respondent made partial payment to [B] in the amount of $4,000 on account of the adjudication.

(98) On August 1, 1988, respondent made payment in the amount of $10,001.53 to [B].

(99) By supplemental letter of inquiry dated January 12, 1989, petitioner advised respondent of further allegations of misconduct in his handling of [A] estate funds.

(100) By letter of February 9, 1989, respondent filed a response to the supplemental letter of inquiry.

(101) By letter dated June 2, 1989, in response to further inquiry from petitioner, respondent stated that the payment made on October 4, 1984 to [P] from estate funds was a mistake and alleged that it was made during a period when he was experiencing problems with [P] errors in his account.

(102) The aforesaid representations were false and intended to mislead petitioner in its investigation.

(103) In his annual attorney registration statements filed pursuant to Pa.R.D.E. 219(d)(iii), for the years 1983-1984 through 1986-1987, respondent

failed to provide the name of any financial institution in which he held fiduciary funds.

## CONCLUSIONS OF LAW

Respondent's conduct in the instant matter is in violation of the following Disciplinary Rules:

(1) D.R. 1-102(A)(3), which states that a lawyer shall not engage in illegal conduct involving moral turpitude;

(2) D.R. 1-102(A)(4), which states that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(3) D.R. 1-102(A)(5), which states that a lawyer shall not engage in conduct that is prejudicial to the administration of justice;

(4) D.R. 1-102(A)(6), which states that a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

(5) D.R. 6-101(A)(1), which states that a lawyer shall not handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it;

(6) D.R. 6-101(A)(3), which states that a lawyer shall not neglect a legal matter entrusted to him;

(7) D.R. 7-101(A)(1), which states that a lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules;

(8) D.R. 7-101(A)(2), which states that a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

(9) D.R. 7-101(A)(3), which states that a lawyer shall not intentionally prejudice or damage a client during the course of the professional relationship;

(10) D.R. 9-102(B)(1), which states that a lawyer shall promptly notify a client of the receipt of his funds, securities, or other properties;

(11) D.R. 9-102(B)(3), which states that a lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them; and

(12) D.R. 9-102(B)(4), which states that a lawyer shall promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

Respondent's aforementioned conduct is in violation of the following Rules of Professional Conduct:

(1) RPC 1.15(b), which states that upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person and that except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property;

(2) RPC 8.4(c), which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and;

(3) RPC 8.4(d), which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## DISCUSSION

The Disciplinary Board must address two issues in this case. First, the board must consider what Disciplinary and Professional Conduct Rules respondent has violated. Then, the board must determine the appropriate discipline to be imposed in light of the magnitude of respondent's transgressions.

The parties have stipulated to the factual circumstances which gave rise to the petition for discipline. The gravamen of the complaint against respondent is that he consciously engaged himself in an area of practice in which he lacked the expertise to render competent legal advice, then proceeded to fail to take proper action on behalf of his client; misappropriated client funds; and mislead the Internal Revenue Service, court, and Office of Disciplinary Counsel. Respondent's misconduct may be proved by a clear and satisfactory preponderance of circumstantial evidence. *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981).

*A. Respondent's failure to comply with statutes and court rules in his representation of the estate of [A] was a failure to render competent legal assistance, in violation of D.R. 6-101(A)(1); D.R. 6-101(A)(3); D.R. 7-101(A)(1); D.R. 7-101(A)(2); and D.R. 7-101(A)(3).*

The critical factor in this aspect of respondent's mishandling of the [A] estate is his willful assumption of legal matter he was incompetent to handle and his subsequent refusal to perform statutorily prescribed duties.

Respondent's duties as a personal representative were outlined in the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. §101 et seq., the Orphans'

Court rules, and the Inheritance and Estate Tax Act, 72 Pa.C.S. §1701 et seq. However, respondent's failure to conform to basic statutory requirements is illustrated by his ignorance of the time in which to receive an inheritance tax discount or his obligation to publish notice of grant of letters of administration. (P-48, p. 16, 21; PEF Code §3162.)

Respondent also failed to timely prepare and file a personal property inventory with the Register of Wills, as required by PEF Code §3301(a), or a supplemental inventory, mandated by PEF Code §3303, despite his knowledge that assets of the estate would include decedent's school district termination pay and federal income tax return, as listed by respondent in a May 14, 1984 letter to [B], May 15, 1984 filing for a $3,336 federal income tax refund, and July 1984 receipt of the funds. See also, Smith, Grossman, Hollinger, *Pennsylvania Fiduciary Guide,* §15 (1983).

Respondent also failed to timely prepare and file a deed transferring real estate until December 1984, despite his duty to do so under PEF Code §3311 (see P-29), or provide [B] with Department of Motor Vehicle transfer title documents until May 6, 1985, thus causing her the loss of use of decedent's automobile; 75 Pa.C.S. §1315. (Respondent later attributed this failure to a heretofore never mentioned lack of proof of insurance.)

Additionally, respondent erroneously included [B's] insurance proceeds as part of the basis for calculating his fee.

He also failed to communicate honestly with his client, choosing instead to lie about his own actions on behalf of the estate and withhold estate funds.

All of the aforementioned and admitted actions taken by respondent in the course of his handling of the [A] estate illustrate respondent's gross disregard

for statutory and fiduciary obligations. Respondent's conduct reflects a negligent, abhorrent lack of competence, which resulted in his intentional failure to seek the legal objectives of the matter [B] had entrusted in his care, and caused her prejudice and unnecessary hardship. Therefore, respondent's conduct violated D.R. 6-101(A)(1), D.R. 6-101(A)(3), D.R. 7-101(A)(1), D.R. 7-101(A)(2), and D.R. 7-101(A)(3).

*B. Respondent's failure to advise his client of receipt of her funds from the estate, failure to account for these funds, and conversion of estate funds violated D.R. 1-102(A)(3); D.R. 1-102(A)(4); D.R. 1-102(A)(6); D.R. 9-102(A); D.R. 9-102(B)(1); D.R. 9-102(B)(3); D.R. 9-102(B)(4); and RPC 1.15(b).*

It must be noted from the outset that an attorney's fiduciary duty to a client is a very important responsibility not to be taken lightly, and that many lawyers throughout the Commonwealth have received severe disciplinary sanctions for failure to adequately fulfill this obligation. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983); *Office of Disciplinary Counsel v. Kanuck,* 517 Pa. 160, 535 A.2d 69 (1987); *Office of Disciplinary Counsel v. Ewing,* 496 Pa. 35, 436 A.2d 139 (1981); *Office of Disciplinary Counsel v. Knepp,* 497 Pa. 396, 441 A.2d 1197 (1982).

In the instant matter, respondent has failed to safeguard the estate funds entrusted into his care, and proceeded a step further by converting the funds for his own use. Although respondent opened an estate bank account within one month of obtaining the grant of letters, as required by [ ] Orphans' Court Rule 1.13(a), he began withdrawing so much

money from the account in May and June 1984 that the account contained insufficient funds to satisfy the bills of the estate. [B] began paying estate obligations out of the proceeds of [A's] life insurance policy in May 1984, a fact she called to respondent's attention.

However, respondent failed to reimburse [B] for these payments, despite the fact he had deposited the proceeds of decedent's $9,925.66 school district termination payment, savings accounts, and $3,336 federal tax refund into the estate account in July 1984 and maintained an account balance in excess of $9,000 through October 1984. Respondent did pay himself from the estate account; in July and August, 1984 he paid himself $3,487.25 in checks drawn on the estate account, $1,487.25 of which was not attributable to administrator or counsel fees, and an additional $9,794.02 by May 1985.

Respondent failed to provide any satisfactory explanation for his failure to perform his fiduciary duties, and in fact, offered varying explanations as to how he had handled the estate account. Respondent testified before the Orphans' Court that he had not opened an estate account at all, but rather had paid [B] and the funeral bill from his attorney escrow account; that he had signed over the school district termination and federal tax refund checks to [B]; and he had given [B] $13,113. Respondent told the Orphans' Court he had no cancelled checks from his personal account to substantiate his claim, and later testified he had reimbursed [B] with check or money order, although he acknowledged he may not have provided the correct amount.

In contrast to his Orphans' Court testimony, respondent initially purported he had paid [B] and she had simply forgotten. Respondent subsequently acknowledged, however, that [B] has unequivocally

stated at all times that she never received any funds from respondent. Respondent claimed he paid [B] with money orders, although he could provide no corroborating evidence. He was also extremely vague about why he failed to pay [B] when the primary estate assets were garnered in July 1984, but rather waited until the end of 1984. Respondent also claimed [B's] departure for vacation over the Thanksgiving and Christmas holidays in 1984 and summer and holiday vacations in 1985, accounted for his failure to provide her with the estate funds.

Respondent also failed to explain what happened to $1,787.25 withdrawn between June and August 1984 and $950 in May 1985.

In addition to respondent's failure to promptly disburse funds he held in trust, he converted those monies for his own use while they were in his possession. Copies of respondent's checking and savings accounts showed that during the period he held the estate funds his balance consistently fell below the amount due to the estate. It is therefore obvious that respondent converted estate funds in the amount of $11,581.27.

Additionally, respondent failed to keep a record of the [A] estate funds. Although he claimed plumbing problems caused a basement flood which destroyed all of his records, respondent did not mention any such problem to Attorney [S], [B's] subsequent counsel, when he requested an accounting. Respondent did, however, file an account in Orphans' Court in May 1987, 18 months after his records were allegedly destroyed. We, therefore, conclude that respondent has no satisfactory explanation for his failure to keep an accounting of the [A] estate.

By converting the [A] estate funds for his own use, failing to notify or account for those funds to

[B], and failing to keep the estate funds inviolate or promptly deliver them to their rightful owner, respondent has demonstrated his inability to fulfill his fiduciary duties to a client and act in a moral, honest, forthright manner. Respondent's conduct has therefore violated D.R. 1-102(A)(3), D.R. 1-102(A)(4); D.R. 9-102(A), D.R. 9-102(B)(1), D.R. 9-102(B)(3), D.R. 9-102(B)(4); and RPC 1.15(b).

*C. Respondent's failure to comply with petitions and citations, his false testimony before the Orphans' Court, his incongruous dealings with the Office of Disciplinary Counsel, and his inaccurate accounting violated D.R. 1-102(A)(4), D.R. 1-102(A)(5), D.R. 1-102(A)(6), RPC 8.4(c), and RPC 8.4(d).*

Respondent's failure to furnish the Orphans' Court audit papers he had a statutory obligation to supply, coupled with the several court orders necessary to compel him to pay [B], illustrate his disregard for the court, of which he is an officer. His false testimony before the Orphans' Court concerning the [A] estate account and funds contained therein further demonstrates respondent's lack of respect for the authority of the court.

Respondent's contrary explanation to the Office of Disciplinary Counsel and hearing committee concerning his handling of the [A] estate further emphasized his deceitful, prejudicial dealings with [B]. Respondent's contradictory statements about the establishment of an estate account and the erroneous method by which he calculated attorney fees, inaccurately including out-of-state real estate and life insurance proceeds, evince a degree of dishonesty and incompetence which proves detrimental to the interests of the public.

Finally, respondent's aforementioned lack of accounting and the resultant prejudice and inconvenience to [B] absolutely cannot be tolerated. The failure to comply with court and ethical requirements designed to safeguard the interests of the public and facilitate the administration of justice requires the imposition of discipline, else the protections of the legal system are without foundation.

Because respondent failed to comply with requirements of the Orphans' Court, offered false testimony, and prejudiced the administration of justice, he violated D.R. 1-102(A)(4), D.R. 1-102(A)(5), D.R. 1-102(A)(6); RPC 8.4(c), and RPC 8.4(d).

Having determined that respondent's conduct violated numerous Disciplinary and Professional Conduct rules, and evinced his flagrant disrespect for honesty, it is incumbent upon the Disciplinary Board to ascertain the appropriate discipline, pursuant to Rule 203(a) Pa.R.D.E.

The primary purposes of attorney discipline are the protection of public interest and maintenance of the integrity of the legal system. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987). In instances in which the attorney's misconduct has been outrageously egregious, disbarment may be necessary in order to insure preservation of the public interest and sanctity of the legal system. See Rule 204(1), Pa.R.D.E. In such cases, the nature and extent of respondent's misconduct must be considered in ascertaining whether disbarment is appropriate. See *Matter of Leopold,* 469 Pa. 384, 366 A.2d 227 (1976).

Two cases previously before the Pennsylvania Supreme Court bears marked similarity to the matter at hand. In the *Grigsby* case, the Supreme Court held that an attorney who has made a false swearing may be disbarred because the nature of his miscon-

duct violates his duty to uphold the truth. *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981).

The respondent in the *Knepp* case admitted to a pattern of misconduct which included gross mismanagement of an estate matter, financial improprieties, conversion and mishandling of client funds, failure to maintain a proper escrow account, charging of excessive legal fees, improper contact with opposing counsel, and deliberate miscommunication with clients. *Office of Disciplinary Counsel v. Knepp,* 497 Pa. 396, 441 A.2d 1197 (1982). The respondent was disbarred in light of his four-year pattern of misconduct and failure to fulfill fiduciary obligations to his clients.

Although the instant matter does not involve a prolonged period of misconduct as *Knepp* did, respondent's actions bear a marked similarity to those of Knepp and Grigsby. Respondent was dishonest with members of the court concerning his handling of the [A] estate, like Grigsby was dishonest in his false swearing. Consequently, according to *Grigsby,* respondent's lack of honesty with the court is a breach of his duty to uphold honesty and integrity, and is a basis for disbarment.

In addition to the parallel to *Grigsby,* respondent's conduct is similar to Knepp. Like Knepp, respondent grossly mismanaged an estate matter, which resulted in hardship on his client, charged excessive legal fees, engaged in various financial improprieties, failed to fulfill his fiduciary obligations, and deliberately misstated the status of the matter to his clients.

Like Knepp and Grigsby, respondent displayed a callous disrespect for the integrity of the legal system in his dealings with the Orphans' Court. Although respondent's misconduct stemmed from the

handling of one estate matter, not a pattern of improprieties as seen in Knepp, his actions were similar to those of the disbarred Knepp. Because of the parallel in actions between respondent and Knepp, the *Knepp* matter is also an indication that disbarment is the appropriate measure of discipline in this case.

The serious nature of respondent's misconduct, the multitude of Disciplinary and Professional Conduct Rule infractions, and the lack of any evidence of mitigation lead us to the conclusion that respondent's egregious misconduct warrants disbarment in order to safeguard public interest and maintain the integrity of the bar.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent be disbarred from the practice of law in the Commonwealth of Pennsylvania. The board recommends further that respondent be ordered to pay costs of investigating and prosecuting this matter.

Messrs. Brown, Gilardi and Schiller dissent and would recommend a four-year suspension.

Ms. Heh and Mr. Eckell did not participate in the adjudication.

## ORDER

And now, April 1, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated October 9, 1990, it is hereby ordered that [respondent] be and he is disbarred from the bar of this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further

598

ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Zappala and Mr. Justice Cappy dissent and would accept the recommendation of the dissenting members of the Disciplinary Board.