**In re Anonymous No. 10 D.B. 91**

Disciplinary Board Docket no. 10 D.B. 91.

LIEBER, *Member,* December 9, 1993—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania ("board") herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On January 10, 1991, the Office of Disciplinary Counsel (hereinafter "petitioner") filed a petition for discipline against [ ] (hereinafter "respondent"). The charges enumerated in the petition arose from respon-

dent's representation of [A]. Respondent was retained to represent [A] in criminal and civil matters arising from [A's] false arrest for a bank robbery. Respondent's representation of [A] was memorialized in a written contingency fee agreement allocating any recovery obtained in the civil litigation—2/3 of the gross recovery to [A] and the remaining 1/3 recovery to respondent.

The factual allegations of the petition assert that in effectuating a settlement of one of the civil claims against the [B] Federal Savings and Loan Association, respondent failed to advise [A] of the receipt of the settlement funds. It is additionally alleged that respondent endorsed or caused to be endorsed the settlement check in [A's] name without [A's] authorization. Then instead of timely remitting to [A] his entitled portion of the receipts of the settlement, respondent deposited the entire proceeds in a non-escrow checking account and put the monies to his personal use.

This misconduct of respondent constituted eleven separate violations of the Disciplinary Rules of the Code of Professional Responsibility. The petition identifies the charges as follows:

A. D.R. 1-102(A)(3), which states that a lawyer shall not engage in illegal conduct involving moral turpitude;

B. D.R. 1-102(A)(4), which states that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

C. D.R. 1-102(A)(6), which states that a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

D. D.R. 6-101(A)(3), which states that a lawyer shall not neglect a legal matter entrusted to him;

E. D.R. 7-101(A)(1), which states that a lawyer shall not intentionally fail to seek the lawful objectives of

his client through reasonably available means permitted by law and the Disciplinary Rules;

F. D.R. 7-101(A)(2), which states that a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

G. D.R. 7-101(A)(3), which states that a lawyer shall not intentionally prejudice or damage a client during the course of the professional relationship;

H. D.R. 9-102(A)(2), which states that all funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved;

I. D.R. 9-102(B)(1), which states that a lawyer shall promptly notify a client of the receipt of his funds, securities, or other properties;

J. D.R. 9-102(B)(3), which states that a lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them; and,

K. D.R. 9-102(B)(4), which states that a lawyer shall promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the

possession of the lawyer which the client is entitled to receive.

Respondent filed an answer denying the substantive charges in the petition. Respondent also alleged in new matter that he was coerced by [A] and [A's] new counsel, [C], Esquire, to pay [A] monies remained owing to respondent from his representation of [A].

On March 8, 1991, the matter was referred to Hearing Committee [  ], chaired by [  ], Esquire, and included members [  ], Esquire and [  ], Esquire. A pre-hearing conference was scheduled for April 25, 1991, at which time reference was made to respondent's desire to resign from the Pennsylvania Bar. Also at this hearing, the parties agreed to twenty-two factual stipulations with accompanying exhibits.

On June 24, 1991, the hearing was commenced without the presence of one of the Hearing Committee members, [  ], Esquire. The parties agreed that the hearing should proceed as scheduled. Opening statements were given and the testimony of [A] was received. The hearing was reconvened and concluded on September 20, 1991.

On May 19, 1993, the Hearing Committee filed its report. The committee determined that respondent violated Disciplinary Rules 1-102(A)(3), 1-102(A)(4), 1-102(A)(6), 9-102(A)(2), 9-102(B)(1) and 9-102(B)(4) by his unauthorized handling of [A's] settlement funds. The committee additionally found the respondent's misrepresentations concerning the status of the settlement with [B] Bank violated Disciplinary Rules 1-102(A)(4) and 1-101(A)(6). Based upon these findings, the Hearing Committee recommended that respondent be suspended for a period of five (5) years. Neither the Disciplinary Counsel nor the respondent filed briefs on exceptions.

The matter was adjudicated at the August 27, 1993 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

The Disciplinary Board of the Supreme Court of Pennsylvania adopts and incorporates by reference herein the following findings of fact which have been stipulated to by the parties and are supported by both documentary and testimony evidence:

1. Petitioner, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement (hereafter Pa.R.D.E.), with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

2. Respondent was born in 1936 and was admitted to practice law in the Commonwealth of Pennsylvania on or about April 26, 1976. His office is located at [ ].

3. In or about July, 1980, respondent was retained to represent [A] in a civil claim against the [B] Federal Savings and Loan Association ([B]), the City of [ ], and certain individual defendants. The civil causes of action from [A's] arrest by the [ ] police on July 2, 1980 related to a robbery of [B].

4. Respondent and [A] executed a written fee agreement which determined respondent's compensation as follows: "1. That should attorneys fees be awarded by the court following a successful lawsuit, then that will fully compensate attorneys, except for any out of pocket expenses. Otherwise attorneys shall receive 1/3 of the gross recovery and plaintiffs shall receive 2/3rds of the gross recovery."

5. Thereafter, respondent filed a civil lawsuit on behalf of [A] captioned, [A] v. [B], et al., [    ] Court of Common Pleas, May Term, 1981, no. [    ].

6. Prior to June, 1985, respondent negotiated settlements with all defendants, other than [B] and distributed those settlement proceeds to his client.

7. In or about June, 1985, with the authorization and consent of [A] respondent negotiated a settlement in the amount of $6,000 with the remaining defendant, [B].

8. In June, 1985, respondent arranged to meet [A] at the [    ] train station. There [A] signed the settlement agreement releasing [B] from liability in return for its payment of $6,000.

9. On or about June 25, 1985, respondent caused the executed settlement agreement to be delivered to [D], Esquire, the attorney representing [B].

10. Under cover of letter dated June 25, 1985, [D] forwarded to respondent on behalf of [B] a draft in the amount of $6,000 drawn on the account of the [E] Insurance Company in full settlement of [A's] claims.

11. On or about June 25, 1986, respondent caused the draft to be deposited into a checking account at the [F] Bank of [    ], account no. [    ], ("the checking account").

12. The checking account was not an escrow account and contained funds belonging to respondent.

13. At all times after July 2, 1985 and continuing until March 18, 1987, the balance of the checking account was below $4,000 and, on numerous occasions, the checking account was overdrawn.

14. The withdrawals from the account resulting in the out-of-trust balances were made by respondent for his own benefit and not for the benefit of [A].

15. The withdrawals were made without the knowledge and consent of [A].

16. Respondent converted the proceeds of the entrusted funds to his personal use.

17. Respondent failed to maintain accurate contemporaneous records of the funds of clients coming into his possession.

18. Between June, 1985 and January, 1987, [A] placed telephone calls to respondent seeking to obtain his portion of the settlement.

19. By letter dated January 16, 1987, [C], Esquire, retained by [A] to represent him in his efforts to obtain his share of the settlement proceeds, wrote to respondent on [A's] behalf. [C] requested that respondent forward a check to his office representing payment of [A's] share along with a copy of the distribution sheet.

20. By letter dated March 3, 1987, [C] requested payment of any money due and owing [A] within ten days from the date of the letter. [C] further informed respondent if he did not receive the monies within the time period, he would "advise [A] of all his options."

21. On or about March 19, 1987, respondent caused his check no. 383 made payable to the order of [C], Esquire, in the amount of $4,000, with the notation thereon "[A] v. Bank settlement," to be delivered to the [   ] office of [C].

22. By letter dated April 2, 1987, [C] thanked respondent for the delivery of the settlement proceeds and requested that respondent submit to him an additional $750 to compensate [A] for the attorney's fees he incurred while pursuing the sums respondent owed him and for lost interest with regard to the settlement proceeds.

23. Respondent previously was subjected to discipline on five occasions, as follows:

"a. Informal Admonition on February 23, 1982, for violations of Disciplinary Rules 6-101(A)(3) and 7-101(A)(2), at file no. [    ] (Ex. P-12);

b. Informal Admonition on May 25, 1983, for violations of Disciplinary Rules 2-110(A)(1) and 2-110(A)(3), at file no. [    ] (Ex. P-13);

c. Informal Admonition on July 20, 1983 for violations of Disciplinary Rules 1-102(A)(5), 6-101(A)(3), 7-102(A)(1) and 2-110(A)(1), at file no. [    ] (Ex. P-14);

d. Informal Admonition on March 21, 1985 for violations of Disciplinary Rules 1-102(A)(4) and (6), 2-110(A)(3), 6-101(A)(3), 7-101(A)(1)(2)(3), at file no. [    ] (Ex. P-15A); and,

e. Informal Admonition on June 10, 1985 for violations of Disciplinary Rules 1-102(A)(4) and (6), at file no. [    ] (Ex. P-22)."

## III. CONCLUSIONS OF LAW

The board finds that respondent violated the following Disciplinary Rules of the Code of Professional Responsibility:

1. D.R. 1-102(A)(3)—which prohibits a lawyer from engaging in illegal conduct involving moral turpitude;

2. D.R. 1-102(A)(4)—which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

3. D.R. 1-102(A)(6)—which prohibits a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law;

4. D.R. 9-102(A)(2)—which requires that all funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in

one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved;

5. D.R. 9-102(B)(1)—which requires that a lawyer shall promptly notify a client of the receipt of his funds, securities, or other properties; and,

6. D.R. 9-102(B)(4)—which requires that a lawyer shall promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

## IV. DISCUSSION

In determining appropriate disciplinary sanctions for professional misconduct, the board is mindful that its primary responsibilities are to protect the public from unfit lawyers and to maintain confidence in the integrity of the bar. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987). The board must, therefore, evaluate whether an attorney has engaged in conduct which hinders the effective and competent practice of law. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 280-81, 472 A.2d 186, 190 (1983).

Each case presented to the board is scrutinized according to the totality of its facts. The nature and gravity of the offending conduct, as well as the presence of mitigating and/or aggravating circumstances, and the

existence of a record of prior discipline are factors which the board considers when deciding each case. Prior case law involving similar misconduct, while not conclusive is instructive. In the matter before us, relevant case law indicates that attorneys who have engaged in commingling and conversion of client funds have received a divergent range of penalties, from private reprimand to disbarment. In assessing the proper discipline, the cases frequently consider: (1) whether forgery was present; (2) whether restitution was made and, if so, under what circumstances; (3) the respondent demonstrated an appreciation of the nature of the misconduct; and (4) whether a record of prior discipline existed.

Disbarment and lengthy suspensions have been ordered in certain commingling cases. Citing two other ongoing disciplinary matters and the magnitude of the breach of trust involved. *Office of Disciplinary Counsel v. Lucarini, supra* (conduct of repeated commingling and conversion warrants disbarment); *Office of Disciplinary Counsel v. Knepp,* 497 Pa. 396, 441 A.2d 1197 (1982) (four year pattern of misconduct involving client funds mandated disbarment despite mitigating circumstances).

In *Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981), an attorney who represented an automobile accident victim was disbarred for conduct similar to that of respondent here. According to the terms of the contingent fee agreement in *Lewis,* the attorney would receive 50% of any balance remaining after medical and other expenses were paid in the event of recovery. There was no agreement relating to any fee for handling the client's no-fault claim. Nevertheless, when Lewis eventually collected policy benefits from the client's insurance carrier, he deposited the check

in his own account and put the money to his personal use. Lewis did not pay his client's medical bills, a fact which he misrepresented to his client. After six months of repeated promises to remit the money to his client, Lewis remitted only half the proceeds and retained the remainder as payment for legal fees. The Supreme Court ordered Lewis disbarred.

In *Office of Disciplinary Counsel v. Kanuck,* 517 Pa. 160, 535 A.2d 69 (1987) the Supreme Court ordered a five-year suspension, where the respondent had engaged in a seven-year pattern of commingling and conversion of client funds. In its determination, the Supreme Court considered that while restitution had eventually been made, the circumstances of the restitution did not mitigate against a severe sanction. Kanuck's argument that the limited nature of his practice justified a lesser discipline was rejected by the court. We note with interest that respondent here presents a similar argument based on his marginal practice and poor office management skills.

Other commingling cases have resulted in less severe discipline. In *In re Anonymous No. 28 D.B. 75,* 9 D.&C.3d 57 (1978), an attorney who received funds on behalf of a client applied those funds to a purported fee for legal representation without the client's authorization. Although that attorney had an extensive record of prior private discipline, he was not found to have misrepresented to his client or kept records improperly. In that case, public censure was deemed appropriate. In *In re Anonymous No. 16 D.B. 77,* 20 D.&C.3d 382 (1980), two instances of commingling and conversion of escrow funds were aggravated by (i) restitution by a bad check and (ii) the attorney's failure to make complete restitution based on his claim that funds were owed to him as fees. A two-year suspension was imposed.

*In re Anonymous No. 5 D.B. 80,* 20 D.&C.3d 444 (1981), a single conversion case, the respondent misappropriated $8,000 belonging to a mentally and physically disabled client. Although that attorney had no prior disciplinary record, showed remorse and made restitution, he was suspended for one year.

Applying the case law here, we note that the germane facts have not been disputed. Respondent does not deny that he failed to advise [A] of the receipt of the settlement funds, endorsed the check without [A's] permission, commingled the funds with his own and utilized these funds for his own benefit. While respondent admits to these acts, he asserts that, by his calculation, some amount of the proceeds received were owed to him for legal services rendered to [A]. This assertion, however, is not substantiated on the record. In fact, while an amount may possibly still have been outstanding from respondent's representation of [A] in the criminal matter, respondent never requested further payment from [A]. Respondent's own records fail to show that a balance was outstanding. Finally, there was no mention of any fee delinquency when respondent finally remitted the $4,000. Respondent's argument for non-remittance is, therefore, without evidentiary basis.

Respondent submits that he was personally afraid of [A] and that this fear made him reluctant to approach [A] regarding his fee. Respondent claims that he became fearful of his client after [A] threatened respondent and his family during a phone call. Although we do not minimize or contest respondent's anxiety following [A's] threats, we find that respondent's initial mishandling of his client's funds cannot be excused on the grounds that he was afraid to conduct further dealings with [A] because of threats made in an after-the-fact telephone conversation.

Furthermore, although respondent was involved in only one instance of commingling, the attendant circumstances are compelling. Not only did respondent accept the funds without telling [A], but he then proceeded to forge [A's] signature, misconduct involving moral turpitude. The wrongdoing was again compounded by respondent's misrepresentation to [A] about the status of the settlement with [B] Bank. Despite the fact that respondent belatedly made restitution, that restitution was prompted by the fear of reprisal by [A's] new attorney and was not motivated by remorse for his own mishandling of the funds. Acts such as those do not comport with the ethical standards required by the court of the profession. *Lewis, supra* at 528, 426 A.2d at 1142.

Respondent argues that his misconduct should be viewed as the effect of grossly inept record keeping. As stated in *Office of Disciplinary Counsel v. Davis,* 532 Pa. 22, 34, 614 A.2d 1116, 1122 (1992), "[r]espondent's office practice may be an explanation, but certainly it is not a justification." In *Kanuck, supra,* the respondent admitted to having commingled funds, but denied that he had converted funds. In mitigation, Kanuck offered in part that he had all but given up the practice of law. There, the court dismissed that explanation as irrelevant, concluding instead that a five-year suspension was proper. In the present case, respondent invokes a defective accounting system and his own willingness to not practice law as justification for a lenient sanction. Even when viewed in the most favorable light, however, respondent's failure to maintain adequate records and to comply with Rules of Professional Conduct epitomizes the kind of professional misconduct from which the public is to be protected.

We further observe that, although respondent's prior misconduct did not involve commingling of client funds, a disturbing pattern of increasing gravity has characterized respondent's disciplinary record.

Accordingly, because prior efforts at leniency have had no rehabilitative effect, and in consideration of the magnitude of the breach of trust implicated herein, the board recommends that respondent be suspended from the practice of law for five (5) years.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [   ], be suspended from the practice of law for a period of five (5) years.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Mr. Gilardi dissents and would recommend a three-year suspension.

Messrs. Hill, Paris, Sloan, Saltz and Dean Carson did not participate in the adjudication.

## ORDER

And now, this 3rd day of February, 1994, upon consideration of the report and recommendations of the Disciplinary Board dated December 9, 1993, it is hereby ordered that [respondent], be and he is suspended from the Bar of this Commonwealth for a period of five (5) years, and he shall comply with all provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.