441 A.2d 1197

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**James W. KNEPP, Jr., Respondent.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1982.

Decided March 8, 1982.

Edwin W. Frese, Jr., Asst. Disciplinary Counsel, Philadelphia, for petitioner.

John R. Moore, Selinsgrove, for respondent.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

O'BRIEN, Chief Justice.

Respondent, James W. Knepp, Jr., was admitted to the Bar of the Commonwealth of Pennsylvania in 1971, and, at the time disciplinary proceedings in the instant matter commenced, maintained a law office in Selinsgrove, Snyder County. The Office of Disciplinary Counsel filed a Petition for Discipline on December 24, 1980, in which it complained in four separate charges of numerous violations of the Disciplinary Rules of the Code of Professional Responsibility discussed below. Respondent filed an answer admitting all allegations and requesting a hearing on mitigating circumstances before a hearing committee. The matter was referred to Hearing Committee 3.06 (Committee) which, after a hearing on February 27, 1981, found violations of all Disciplinary Rules on the first, second and third charges. On the fourth charge, it determined that two of the Disciplinary Rules invoked had not been violated.[1] In a report filed May 4, 1981, the Committee recommended a six-month suspension from the practice of law. The Office of Disciplinary Counsel filed exceptions and a supporting brief requesting a minimum suspension of two years on May 21, 1981, while respondent's brief of May 26, 1981, argued that a private reprimand would be the appropriate discipline. The matter was referred to the Disciplinary Board (Board) on May 29, 1981.

The Board's majority Report and Recommendation dated July 30, 1981, found violations of all Disciplinary Rules in each of the four charges, and recommended a three-year suspension. A dissenting report, however, recommended disbarment. On September 25, 1981, this Court ordered respondent's immediate suspension and issued a Rule to Show Cause why respondent should not be disbarred, rejecting the Board majority's recommendation. Respondent filed his response to the Rule on October 21, 1981, and on October

---

1. In spite of the Committee's finding, respondent, in his brief in response to the Committee's report, conceded that he had violated these rules.

26, 1981, the Office of Disciplinary Counsel submitted its reply thereto. Argument was heard at Philadelphia on January 19, 1982.

The facts are not in dispute. Having reviewed the record *de novo*, we find no basis for disturbing the Board's findings as set forth in its report, and therefore substantially adopt them in the discussion which follows. Each of the charges made in the Office of Disciplinary Counsel's Petition will be considered separately.

## Charge I (Kelly Estate)

Respondent was retained to represent the estate of Thomas P. Kelly (Estate) on December 5, 1977. Although in August, 1978, he was provided with title to the automobile that belonged to the Estate, respondent neglected to take the steps necessary to transfer title to the appropriate transferee until late January 1979. Respondent held checks from the Commonwealth of Pennsylvania payable to the Estate from July, 1978, to December 6, 1978, when he was personally contacted by an investigator from the Office of Disciplinary Counsel. Similarly, respondent retained for eight months checks payable to the Estate for the purchase of a mobile home belonging to the Estate. After the checks were deposited on December 6, 1978, again after respondent was contacted by the investigator, the checks were returned unpaid because of insufficient funds in the purchasers' account. Respondent was not able to collect on the Estate's claim until October 30, 1979. Further, he represented one of the purchasors of the mobile home at the same time he was prosecuting this claim. Respondent misrepresented to a beneficiary of the Estate that he had paid for decedent's funeral expenses, when in fact he had not. Respondent charged excessive counsel fees of $2,000 against the gross estate, twenty-four and seven-tenths percent of the gross estate of $8,092.45. He voluntarily reduced this fee to $800 after being contacted by the Office of Disciplinary Counsel in October, 1979. Finally, respondent never notified the beneficiaries or sent them copies of the First and Final Account filed for the Estate.

In light of the above, the Board concluded that respondent violated Disciplinary Rules dealing with conduct involving dishonesty, fraud, deceit or misrepresentation, charging a clearly excessive fee, refusing to accept or continue employment if the interests of another client may impair the independent professional judgment of the lawyer, and neglect of a legal matter.[2]  We agree.

### Charge II (Reichenbach)

In April, 1976, respondent represented Kathy M. Reichenbach (Client) in divorce and related proceedings.  Client and her husband (Husband) agreed that proceeds of an Internal Revenue Service (I.R.S.) check for $384.24 were to be equitably distributed between them.  On May 9, 1977, respondent cashed this check but failed to deposit it into an escrow account, instead converting the money to his own use.  He later gave Client $192 of his own funds, intentionally misrepresenting that the check was "stale" and had to be returned to the I.R.S., and that I.R.S. would reimburse him.  Respondent also lied to Husband several times about the status of the check.  On April 28, 1976, counsel for Husband demanded distribution of one-half the amount of the check within ten days.  In a verbal reply, respondent again deliberately misrepresented that I.R.S. had not yet reissued the check.  On January 9 and 10, 1980, without the consent of Husband's counsel, respondent unsuccessfully attempted to personally contact Husband both at his place of employment and at home.  When he finally contacted Husband, respondent invited him to visit his office, where he would receive his share of the check plus additional compensation for his trouble.  At the direction of counsel, however, Husband did not visit respondent's office as requested.  On January 10, 1980, respondent gave a partner of Husband's counsel $222.86 in cash, representing one-half the amount of the check plus six percent interest.

The Board concluded that by his conduct respondent had violated the Disciplinary Rules dealing with illegal conduct

2.  DR1–102(A)(4); DR2–106(A); DR5–105(A) & (B); DR6–101(A)(3).

involving moral turpitude, conduct involving dishonesty, fraud, deceit or misrepresentation, and conduct which reflects adversely on an attorney's fitness to practice law.[3] In addition the Board concluded that the Disciplinary Rules' requirements that an attorney deposit all client funds into an identifiable bank account, promptly notify a client of receipt of the client's funds, maintain complete records of all client funds coming into the attorney's possession and render to the client appropriate accounts thereof, and promptly pay or deliver a client's funds upon request.[4] Again, we agree with these conclusions.

### Charge III (Nesbitt)

In April, 1978, Hugh Nesbitt (Client) retained respondent to represent him in the purchase of certain real estate in Perry Township, Snyder County, from a decedent's estate. On April 28, 1978, Client obtained a personal loan for $3,000 to finance the purchase and pay respondent's legal fees of $500. In mid-1978 respondent withdrew $500 belonging to another client from respondent's escrow account. Respondent had not deposited any of Client's borrowed funds into the account. Client, although he had not received a deed for the property, found a buyer. Respondent, knowing that Client did not have a deed because respondent had not attempted to secure good and marketable title, falsely informed Client and buyer that the deed was forthcoming. On or about June 11, 1979, respondent, knowing he was not owed such a fee, improperly converted $650 of Client's funds from the escrow account as an additional legal fee from Client. Shortly thereafter, respondent converted an additional $100 of the escrow funds, and by January 22, 1980, he had converted all or a substantial portion of the $2,500 in the account. On that same date respondent deposited into the escrow account the proceeds of a personal loan taken in his name for $11,000 to replace Client's funds. On or about August 1, 1980, respondent stopped payment on a $1,000

3. DR1–102(A)(3), (4) & (6).

4. DR9–102(B)(1), (3) & (4).

check held by the original seller as downpayment since April, 1978, and issued a check for $2,475 payable to seller, concluding his representation of Client in the real estate transaction.

The Board correctly concluded in its report that the conduct described above violated the Disciplinary Rules dealing with illegal conduct involving moral turpitude, conduct involving dishonesty, fraud, deceit or misrepresentation, conduct which reflects adversely on an attorney's fitness to practice law, neglect of a legal matter, intentional failure to seek a client's lawful objectives through reasonably available means, and intentionally prejudicing or damaging a client during the course of the attorney-client relationship.[5]

## Charge IV (Escrow Account)

From 1976 to 1980 respondent's escrow account contained insufficient balances caused by respondent's numerous conversions of funds from the account to his personal uses or uses other than those for which the funds were intended. The clients involved included Curtis Tomlinson, Pilgrim Sportswear—Larry Pfirman, the Betty H. Simcox Estate, the Nelson Goodman Estate, the Charles Keller Estate and the Sheesley Estate. Respondent admits that these conversions totalled $14,000. On January 22, 1980, respondent deposited $11,000 in personal loan proceeds in the escrow account to cover the shortage of $10,251.03 caused by his conversion and misuse of his clients' funds.

On the basis of the foregoing the Board concluded that respondent had violated the Disciplinary Rules dealing with illegal conduct involving moral turpitude, conduct involving dishonesty, fraud, deceit or misrepresentation, conduct which reflects adversely on an attorney's fitness to practice law, intentionally prejudicing or damaging a client during the course of the attorney-client relationship, and failing to deposit all funds received on behalf of a client into an

5. DR1–102(A)(3), (4), & (6); DR6–101(A)(3); DR7–101(A)(1) & (3).

identifiable bank account and commingling client and personal funds.[6]

This Court is vested with exclusive jurisdiction over matters involving attorney discipline. It is our responsibility, therefore, to protect the public and to preserve public confidence in the legal profession and the judicial system. *Office of Disciplinary Counsel v. Lewis*, 493 Pa. 519, 426 A.2d 1138 (1981); *Office of Disciplinary Counsel v. Herman*, 493 Pa. 267, 426 A.2d 101 (1981); *Office of Disciplinary Counsel v. Grigsby*, 493 Pa. 194, 425 A.2d 730 (1981); *Matter of Leopold*, 469 Pa. 384, 366 A.2d 227 (1976), *Office of Disciplinary Council v. Walker*, 469 Pa. 432, 366 A.2d 563 (1976). Respondent's violations of the Disciplinary Rules constitute serious misconduct which makes him subject to the imposition of discipline. Pa.R.D.E. 203(a). Disbarment is the most serious form of attorney discipline. Pa.R.D.E. 204(1). As we explained in *Matter of Leopold, supra* 469 Pa. at 393–394, 366 A.2d at 231–232,

"This Court has long recognized the grave nature of disciplinary procedures and our responsibility to exercise our inherent power to impose the extreme sanction of disbarment with caution. *E.g., In re Shigon*, 462 Pa. 1, 329 A.2d 235 (1974); *In re Berlant*, 458 Pa. 439, 328 A.2d 471 (1974); *Johnson Disbarment Case*, 421 Pa. 342, 219 A.2d 593 (1966); *In re Graffius*, 241 Pa. 222, 88 A. 429 (1913). In our decision of *In re Graffius, supra*, 241 Pa. at 223–24, 88 A. at 430, we explained the balance which must be accomplished in fulfilling this task:

'The power of a court to disbar an attorney should be exercised with great caution, but there should be no hesitation in exercising it when it clearly appears that it is demanded for the protection of the public. The court by admitting an attorney to practice endorses him to the public as worthy of confidence in his professional relations, and if he becomes unworthy, it is its duty to withdraw its endorsement: *Davie's Case*, 93 Pa. 116' [footnote omitted]."

**6.** DR1–102(A)(3), (4) & (6); DR7–101(A)(3); DR9–102(A).

The serious nature and extent of respondent's misconduct would unquestionably justify disbarment. *See, e.g., Matter of Green*, 470 Pa. 164, 368 A.2d 245 (1977); *Matter of Leopold, supra.* The only question this Court must now decide is whether to order respondent's disbarment or to impose a lesser form of discipline. Respondent freely admits all allegations and claims to recognize the serious nature of his misconduct. Nevertheless, respondent argues that mitigating evidence of his moral and ethical qualities renders disbarment unnecessary to the protection cf the public, and distinguishes this case from those in which we have imposed disbarment. We find respondent's argument to be without merit.

Respondent attributes his misconduct to financial difficulties arising from his extensive involvement in politics, coupled with his desire to maintain an image of solvency. This in no way mitigates the seriousness of his misconduct involving clients' funds. Respondent also argues that the fact that he has no prior disciplinary record is a mitigating factor. We disagree. Respondent's pattern of misconduct over a four-year period and the number of disciplinary violations during that time minimize any mitigating effect of prior blamelessness. Respondent was admitted to practice in this Commonwealth in 1971; the pattern of misconduct he acknowledges began in 1976 and continued until the Office of Disciplinary Counsel commenced its investigation in 1980. Further, respondent's conduct during this four year period clearly points to his untrustworthiness, dishonesty and utter disregard for his fiduciary duty to his clients and for the Code of Professional Responsibility.

Respondent also points to his behavior *after* he became aware that he was being investigated and his escrow account was likely to be audited. He made full restitution by taking a personal loan for $11,000 and depositing the proceeds in his escrow account on January 22, 1980. After initially lying to the investigator, he cooperated fully and admitted all charges. He argues that he is contrite and repentant and will never err again. We are not satisfied that these facts,

given respondent's awareness of the Office of Disciplinary Counsel's investigation, sufficiently mitigate the severity of respondent's misconduct as to justify a lesser form of discipline.

Accordingly, the Rule to Show Cause why respondent should not be disbarred is made absolute. James W. Knepp, Jr., is disbarred from the practice of law within the Commonwealth of Pennsylvania and he shall comply with Pa.R. D.E. 217.