**In re Anonymous No. 67 D.B. 92**

Disciplinary Board Docket no. 67 D.B. 92.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SCHILLER, *Member,* August 17, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. PROCEDURAL HISTORY

Respondent was admitted to practice law in the Commonwealth of Pennsylvania on or about April 21, 1958. His office address was listed as [     ], however, requests for current information have been refused.

An investigatory hearing concerning respondent's handling of certain collection matters which [A] had engaged respondent to perform was scheduled for December 1991. Respondent requested a postponement citing ill health. The investigatory hearing was rescheduled for February 20, 1992 before Chairperson [     ]. Disciplinary Counsel was present and, although respondent did not attend, [B], Esquire, appeared on his behalf. None of respondent's relevant financial records requested or subpoenaed by the Hearing Committee were produced.

On July 1, 1992, the Office of Disciplinary Counsel filed a two-charge petition for discipline charging respondent with violating R.P.C. 1.15(a), regarding a lawyer's obligation to hold property of clients or third persons in his possession in connection with the representation separate from his own property, and R.P.C. 1.15(b), which outlines the lawyer's responsibility of

prompt notification upon receipt of funds or other property in which a client or third party holds an interest.

No answer was filed within the appropriate time frame.

The matter was assigned to Hearing Committee [    ] comprised of [C], Esquire, Chairman, [    ], Esquire and [    ], Esquire.

At a February 19, 1993 hearing, neither the respondent nor a representative appeared at this hearing. At this juncture, Chairman [C] delineated the efforts undertaken by the Hearing Committee to schedule various hearings and respondent's consequent failures to cooperate in these scheduling matters. As noted above, in December 1991, an investigatory hearing had been scheduled requiring respondent's attendance, but respondent advised the Disciplinary Counsel that physical ailments precluded him from attending that hearing. Several letters were sent from the Office of Disciplinary Counsel to respondent urging compliance with the rules of the Disciplinary Board and requesting some verification of respondent's infirmities. Another hearing was scheduled for October 9, 1992, but on September 24, 1992, respondent informed Disciplinary Counsel that his physical condition, without elaboration, precluded his attendance at the hearing and asked for an extension. For substantiation respondent provided the name of a doctor at [D] Hospital, bolstered only by a telephone call from someone stating he was a doctor and that the respondent was a patient and in ill health. The caller represented that respondent did not authorize the release of any further details.

More requests were submitted to respondent asking for medical records documenting his illness so that the matter could properly be continued. Up to the date of the hearing, respondent did not respond to the request.

On January 7, 1993, the Disciplinary Board issued an order setting a hearing date for February 19, 1993. The order provided that further continuances were contingent on respondent's production of either authorization to discuss respondent's physical condition with his physicians or a copy of respondent's medical records.

Respondent sent a letter to [C] detailing his personal version of his illness and his lack of knowledge regarding acquiring access to his medical records. [C] contacted respondent's secretary and again requested authorization to speak with respondent's doctors.

On February 15, 1993, respondent's secretary informed [C] that respondent was in the hospital. When [C] requested the name of the hospital, the admission date and the name of respondent's physician, respondent's secretary denied access to that information. Two days later, [C] sent a letter to respondent advising him that the hearing was to proceed as scheduled unless the committee received the appropriate authorization to contact respondent's physicians or access to respondent's medical records. [C] again reiterated this request to respondent. [C] was informed that respondent had been in [E] Hospital but that he had been discharged the previous day. The hospital would not provide [C] with any information without authorization from respondent.

In the absence of any response from respondent, and citing the historic lack of cooperation, the Hearing Committee decided to hold the hearing. After considering the records established at the hearings held on February 20, 1992 and February 19, 1993, the Hearing Committee recommended that respondent be suspended from the practice of law for a period of not less than three years.

Respondent filed a letter protesting the conduct of the hearing, which has been construed as a filing of exceptions.

## II. FINDINGS OF FACT

The board finds no reason to disturb the findings of fact of the Hearing Committee, which read:

(1) In October, 1987 [A] engaged respondent as an attorney to collect certain debts owed to the company.

(2) At the time of the engagement, the principal office of [A] was located at [    ].

(3) By the terms of his engagement, respondent was to render an account and remit a portion of any funds collected on behalf of [A] each month following collection.

(4) Between October 1987 and May 5, 1988, [A] referred to respondent approximately 29 accounts for collection totalling approximately $27,600.

(5) Between October 1987 and May 1988 [A] forwarded the sum of $1,545 to respondent for advanced costs.

(6) By letter dated August 10, 1989, Attorney [F] of [    ], sent respondent the sum of $3,294.83 representing collections that [F] had made at the request of respondent on behalf of [A].

(7) By letter dated November 13, 1989, [F] sent respondent the sum of $1,387 representing collections that [F] had made at the request of respondent on behalf of [A].

(8) By letter dated February 17, 1989, [F] sent respondent the sum of $3,806.40 representing collections that [F] had made at the request of respondent on behalf of [A].

(9) Between October 1987 and September 1989, respondent had collected not less than $10,905.02 on behalf of [A], and had deposited same in his escrow account no. [    ] with the [G] Bank.

(10) As of September 7, 1989, respondent had made no payments or distributions to [A], on account of fees or monies collected on their behalf.

(11) During the period January 1988 through September 7, 1989, respondent drew checks on this escrow account, [G] Bank escrow account no. [    ], to pay personal and business expenses, including:

| Check No. | Check Date | Amount | Payee |
|-----------|-----------|--------|-------|
| 3457 | 02/01/88 | $ 91.00 | [H] |
| 3468 | 02/10/88 | 90.98 | [I] |
| 3489 | 02/23/88 | 391.80 | [J] Auto Ins. |
| 3510 | 03/09/88 | 36.00 | [K] |
| 3582 | 05/08/88 | 500.00 | [L] |
| 3599 | 05/19/88 | 106.84 | [M] Florist |
| 3869 | 11/23/88 | 41.35 | [N] |
| 3970 | 01/27/89 | 90.62 | [O] |
| 3976 | 02/06/89 | 10.95 | [P] |
| 4015 | 03/01/89 | 67.53 | [Q] |
| 4022 | 03/14/89 | 58.50 | [R] |

(12) On or about March 10, 1989, respondent deposited a $1,500 bank loan into the aforesaid escrow account.

(13) As of September 7, 1989, this escrow account contained a balance of only $7,797.23.

(14) By certified letters dated August 10 and August 22, 1989, respondent was informed by [A] that:

(a) Respondent was discharged as legal counsel for [A].

(b) Respondent was instructed to submit an accounting of all funds he received to [A] and a statement

of all disbursements that he had made on behalf of [A].

(c) All files and information pertaining to [A], their debtors and collections, should be returned to the company.

(d) All funds collected on behalf of [A] less funds properly expended were to be immediately transmitted to [A].

(15) Respondent refused to turn over to [A] its files and information or to provide a statement of account or to transmit any funds that he had collected on behalf of [A].

(16) As a result, [A] engaged Attorney [S] to bring suit against respondent to compel an accounting and recover the funds collected by respondent on behalf of [A].

(17) In June of 1991, [S], as a result of the suit, recovered a statement of account from respondent together with funds of approximately $12,000.

(18) The costs, fees and expenses of [S] were paid by [A] and amounted to approximately $12,000.

(19) An inspection of respondent's financial records indicates that respondent was collecting funds on behalf of other clients and collection agencies, but the amount of his collections and/or distributions cannot be ascertained from the available documents.

(20) Respondent did not honor a subpoena requesting records documenting collections from other clients so that an examination could be conducted regarding commingling or conversion of funds.

(21) Between January 1988 and September 7, 1989, respondent commingled funds belonging to his client, [A], with his own.

(22) Between the period January 1988 and September 7, 1989, respondent converted funds of his client, [A], by using them for his own personal and business expenses.

(23) Respondent did not comply with the order of the Disciplinary Board requiring him to produce substantiation for his physical disability and medical treatment.

(24) Respondent declined to appear before the investigatory hearing committee or to produce his records for said committee.

## III. CONCLUSIONS OF LAW

The board finds that, based on the facts, respondent is liable for violation of the following Rules of Professional Conduct:

(A) R.P.C. 1.15(a), which states that a lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other properties shall be preserved for a period of five years after termination of the representation; and

(B) R.P.C. 1.15(b) , which states that upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person

is entitled to receive and, upon request by the client or third person, shall promptly render a full account regarding such property; and

(C) R.P.C. 8.1(a), respondent failed to disclose material facts requested in connection with a disciplinary matter.

## IV. DISCUSSION

When the board reviews disciplinary matters de novo, it determines whether an attorney's conduct makes him unfit to practice law from the standpoint of protecting the public trust and the integrity of the bar. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 579, 506 A.2d 872, 875 (1986).

Precedent establishes that unauthorized dealings with client funds by an attorney requires some form of public discipline which will vary depending upon the aggravating or mitigating circumstances. See *In re Anonymous No. 35 D.B. 88,* 8 D.&C.4th 344, 355 (1990). The critical factors in determining the appropriate disciplinary sanction for commingling involves consideration of respondent's background and the circumstances relating to the commingling and/or conversion. In some cases, the degree of misconduct may be serious enough to levy the severe sanction of disbarment. See *e.g., Office of Disciplinary Counsel v. Knepp,* 497 Pa. 396, 403, 441 A.2d 1197, 1201-1202 (1982), (attorney's four-year pattern of misconduct, including neglecting legal matters, converting client's money, charging excessive legal fees, making dishonest statements to clients and failing to maintain proper records of clients, warranted disbarment despite presence of mitigating circumstances).

The uncontroverted evidence here establishes that respondent commingled the funds of his client, [A], with those of his own, for over a period of two years. He further utilized part of the commingled funds for his personal expenses. It was only after the client discharged respondent, demanded an accounting and initiated both a request for a disciplinary investigation and a lawsuit that respondent restored the client's funds.

Respondent's belated defenses to these allegations, *i.e.,* that his escrow fund never fell below the required amount and his companion assertion that the mishandling of funds was traceable to reliance of information from the Disciplinary Board, even if found to be correct,[1] are unpersuasive. The root of the misconduct was the unlawful commingling and unlawful failure to segregate the money. The fact that an overall adequate balance may have been maintained is simply irrelevant. In addition, respondent's claim that he commingled funds based on instruction from the Disciplinary Counsel is totally unsupported.

Respondent also argues that lack of notice and lack of due process compromise the legality of the disciplinary proceedings against him.

The record belies lack of notice and due process to respondent and, in fact, shows diligent effort by

---

1. Any lack of precision in the proof of the commingling/conversion charge is traced, not to lack of due diligence by Disciplinary Counsel, but, rather to respondent's failure to produce his records as requested, including those related to his medical conditions which precluded him from attending the hearings and cooperating with the Hearing Committee. His only evidence consisted of some self-serving letters, presented to the board after the hearing was conducted and a recommendation announced.

both Hearing Committees to accommodate respondent's physical disabilities.

Respondent's counsel accepted service of the petition for discipline and forwarded it to respondent. Respondent was also afforded ample opportunity for continuances and was instructed on the proper procedure under the board's rules to apply for further postponements. Respondent chose to ignore both the requests and the advice of the board.

While not labeled precisely as a mitigating circumstance, respondent describes himself as a poor administrator. Such a characterization, while explanative of respondent's behavior, does not excuse the misconduct. *Office of Disciplinary Counsel v. Davis,* 532 Pa. 22, 614 A.2d 1116 (1992).

The combination of the serious disciplinary infractions proven here with the aggravating factor of respondent's own failure to participate in the process necessary to properly assess his present standing to practice law, balanced against respondent's lack of prior discipline, indicates a recommendation of a two-year suspension.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be suspended for a period of two years. It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Ms. Lieber did not participate in the adjudication.

Mr. Eckell dissents and would recommend a three-year suspension.

## ORDER

And now, September 13, 1994, upon consideration of the report and recommendations of the Disciplinary Board dated August 17, 1994, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of three years and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Cappy dissents and would suspend respondent for two years in accordance with the recommendation of the Disciplinary Board.

Mr. Justice Frank J. Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket no. 94 R1801, due to the unavailability of Mr. Justice Rolf Larsen, see no. 127 Judicial Administration Docket no. 1, filed October 28, 1993.