## In re Anonymous No. 150 D.B. 97

Disciplinary Board Docket no. 150 D.B. 97.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

CUNNINGHAM III, *Member,* March 17, 1999—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules

of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On November 25, 1997, a petition for discipline was filed by Office of Disciplinary Counsel against respondent, [   ]. The petition alleged that respondent neglected client matters, commingled client funds, failed to communicate with clients, and failed to report information about his escrow accounts to the office of attorney registration. Respondent filed a response to the petition on December 19,1997.

A disciplinary hearing was held on April 22, 1998 before Hearing Committee [   ] comprised of Chair [   ], Esquire, and Member, [   ], Esquire.[1] Respondent represented himself. Petitioner was represented by [   ], Esquire.

The Hearing Committee filed a report on August 24, 1998 and recommended a period of suspension ranging from six months to one year. Petitioner filed a brief on exceptions on September 14, 1998 and contended that the appropriate discipline was a suspension of not less than one year and one day. Respondent filed a brief in response to exceptions on October 9, 1998 and contended that probation or a suspension in the range suggested by the Hearing Committee was appropriate.

---

1. One of the Hearing Committee members was unable to attend the hearing. Respondent was advised of his options and agreed to proceed before a two-member panel.

This matter was adjudicated by the board at the meeting of November 18, 1998.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was born in 1952 and was admitted to practice law in the Commonwealth of Pennsylvania in 1976.

(3) Respondent's principal office for the practice of law is located at [　]. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(4) Respondent is currently on active status in this Commonwealth.

### *Charge I*

(5) Respondent filed registration forms with the disciplinary office for attorney registration for the years 1991-1992 and 1992-1993.

(a) On the 1991-1992 form, under the question requesting the name of each financial institution in this Commonwealth in which the attorney on May 1 of the current year or at any time during the preceding 12 months

held funds and other property of clients, respondent did not provide an answer.

(b) On the 1992-1993 form, under the question requesting the name of each financial institution in this Commonwealth in which the attorney on May 1 of the current year or at any time during the preceding 12 months held funds and other property of clients, respondent answered "none."

(6) Respondent filed an application for resumption of active status for the year 1993-1994.

(a) Under the question requesting the name of each financial institution in this Commonwealth in which the attorney on May 1 of the current year or at any time during the preceding 12 months held funds and other property of clients, respondent answered "none."

(7) During this time, 1991-1993, respondent maintained an escrow account at [A] Bank captioned [respondent], Esquire, *client's trust account*, account number [  ].

(a) [A] Bank became [B] Bank and respondent maintained the same account number at [B] Bank captioned [respondent], Esquire, *clients escrow account*.

(8) Respondent filed a registration form for 1996-1997 in which, under the question requesting the name of each financial institution in this Commonwealth in which the attorney on May 1 of the current year or at any time during the preceding 12 months held funds and other property of clients, respondent checked the box "none." On this form respondent certified that:

(a) he was "familiar and in compliance with Rule 1.15 of the Pennsylvania Rules of Professional Conduct re-

garding the handling of funds and other property of clients and others;"

(b) all fiduciary accounts that he maintained in Pennsylvania were in financial institutions that have been approved by the Supreme Court of Pennsylvania for the maintenance of such accounts pursuant to Pa.R.D.E. 221; and

(c) information provided on the form is true, . . . . "If any statements are false, I realize I am subject to discipline by the Supreme Court."

(9) At that time, respondent had a money market account at [C] captioned [respondent], Esquire, [   ] account number [   ].

## Charge II: The [D] Matter

(10) In or around August 1989, [D] retained respondent to represent her in all claims arising from a personal injury sustained in an accident while a passenger in a van owned by [E].

(11) On or around January 20, 1990, [D] decedent died intestate, leaving a brother, [F], as sole intestate heir.

(12) In or around August 1991, respondent contacted [F] by telephone and requested that he meet with respondent at his office at which time respondent represented to [F] that decedent's claims against [E] had been settled for $7,500.

(a) [F] retained respondent to complete the settlement of the matter.

(b) Respondent told [F] that no settlement proceeds could be distributed until the decedent's estate was probated.

(c) Respondent requested that [F] who resided outside of the Commonwealth, renounce any right to administer to the estate in favor of one of respondent's office staff.

(d) [F] agreed to renounce any right to administer the decedent's estate.

(e) Respondent told [F] he would receive distribution of the settlement proceeds in April 1992.

(13) In or around August 1991, respondent filed a petition for grant of letters of administration and a renunciation executed by [F].

(a) Respondent requested that letters of administration be issued to his employee, [G].

(b) He identified himself as attorney to the estate.

(14) In or around August 1991, the [   ] County Register of Wills issued letters of administration to [G] at no. [   ] of 1991.

(15) Thereafter, respondent:

(a) failed to keep [F] informed about the status of the matter; and

(b) failed to complete estate administration.

(16) Between April 1992, and September 1992, [F] contacted respondent on several occasions to inquire about the settlement money. [F] never spoke to respondent, only to his staff.

(17) In or around October 1992, respondent's office telephone had been disconnected.

(18) By letter dated November 18, 1994, sent by certified mail, return receipt requested, to respondent's office at [   ], [F] requested that respondent advise him of

the status of the settlement, but the letter was returned to [F] stamped "forwarding order expired."

(19) Respondent failed to advise [F] of his change of office address and telephone number.

(20) Sometime in March 1995, respondent telephoned [F] and advised him that he could not find the file and that he would get back to him, but he failed to contact [F] again.

(21) By certified letter, dated May 2, 1995, which was received by respondent's agent, [F] requested information regarding the estate of [D]; a full accounting of all funds received by respondent on behalf of the estate; and the name and mailing address of counsel representing [E] Company.

(22) Respondent failed to respond to this letter or to render an accounting.

(23) After receiving a copy of the D.B.-7 letter request for statement of respondent's position from petitioner, respondent made distribution to [F] by check dated March 16, 1996 in the amount of $4,158.50, issued from a money market account with [C].

*Charge III: The [H] Matter*

(24) In or around December 1989, [H] retained respondent to represent her in all claims arising out of an accident in which she suffered personal injury and property damage when her automobile was hit by a [I] bus.

(25) On or around September 12, 1991, respondent filed in [ ] County Court of Common Pleas, a complaint captioned *[H] v. [I]*, docketed at September term, 1991, no. [ ].

(26) By letter dated December 2, 1991, respondent's paralegal, [J] requested that [H] contact respondent's office to set up a meeting to discuss her lawsuit.

(a) From this date until December 1992, there was no further communication between respondent and [H].

(b) Sometime in February or March 1993, respondent participated in the taking of [H's] deposition.

(c) After the taking of that deposition, respondent failed to communicate with [H] and to take any action to prosecute her claim.

(27) The court made two requests of respondent to file a civil case information form in the above-captioned case.

(a) Respondent received notice of these requests which were sent by first-class mail.

(b) Respondent failed to respond to these requests.

(c) By order dated October 27, 1993, the Honorable [K] issued a rule to show cause why a judgment of non pros should not be entered due to respondent not responding to the court's two requests of him to file a civil case information form in the above-captioned case.

(d) The court sent a copy of the order to respondent by first-class mail.

(e) Notice of that order was published in the *[L]* on November 1, 1993.

(f) Respondent failed to respond to the rule to show cause.

(28) By order dated December 7, 1993, Judge [K] entered a judgment of non pros due to respondent's failure to file a civil case information form.

(a) The prothonotary sent respondent a copy of the order by first-class mail.

(b) Respondent failed to advise [H] that the case was non prossed.

(29) In or around July 1994, [H] telephoned respondent's office, and respondent told her that he would return her call the next week.

(a) [H] telephoned respondent's office several times over the next several months and respondent failed to tell her that her case had been non prossed.

(30) By certified letter dated August 4, 1994, which was received by respondent on August 9, 1994, [H] advised him that she had made repeated phone calls to his office seeking the status of the lawsuit.

(a) Respondent failed to respond to the certified letter.

(b) In or around September 1994, [H] telephoned respondent's office to inquire about the status of her case and respondent advised her that he would call her back the following week.

(c) Respondent failed to return the phone call as promised.

(d) After March 1995, [H] telephoned respondent's office several times and left messages on his answering machine.

(e) Respondent failed to return any of these calls.

(31) By certified letter dated May 16, 1995, which was received by respondent on May 17, 1995, [H] requested:

(a) that he provide her with a copy of the terms of his fee agreement regarding her case;

(b) an explanation of the delay in concluding the case;

(c) an explanation of the actions that needed to be taken to complete the matter;

(d) a date by which respondent anticipated the matter would be completed;

(e) the status of the suit filed on her behalf; and

(f) information as to whether respondent had filed a civil action on her behalf.

(32) Respondent failed to respond to that letter.

*Charge IV: The [M] Matter*

(33) In or around December, 1988, [M] and two passengers, minors, retained respondent to represent them in a personal injury action suffered when a vehicle she was operating hit a raised trolley track.

(34) On or around December 21, 1990, respondent filed a complaint in the court of common pleas, [   ], captioned, *[M] v. [I],* December term, no. [   ].

(35) In or around August 1991, an award in favor of defendants was granted due to respondent's failure to appear at the scheduled arbitration hearing.

(36) In or around September 1991, respondent filed an appeal from award of arbitration on behalf of [M].

(37) By letter dated November 15, 1991, [I]  notified respondent that depositions of the plaintiffs were scheduled for November 26, 1991.

(38) On that date, respondent failed to appear at the scheduled deposition.

(39) By order dated December 16, 1991, the Honorable [N] ordered plaintiffs to appear and submit to an

oral deposition within 15 days of the date of the order or risk sanctions.

(40) Respondent failed to appear for oral deposition within 15 days as provided by the above court order.

(41) By order dated March 12, 1992, Judge [N] sanctioned the plaintiffs and ordered them to pay $300 within 30 days of the date of the order or risk further sanctions.

(42) By letter dated April 3, 1992, to [M], respondent informed her that depositions were now scheduled for April 23, 1992 and that it was necessary for her to be present.

(43) On or around April 23, 1992, [M] was deposed, but respondent failed to produce the other plaintiffs for deposition as required by the orders dated December 16, 1991 and March 12, 1992.

(44) On or around April 29, 1992, defendant's motion for sanctions, to be presented to the court of common pleas on May 8, 1992, was hand-delivered to respondent's office.

(45) By order dated May 8, 1992, Judge [N] ordered that the plaintiffs [O] and [P] the minors, were precluded from testifying at trial and/or precluded from presenting any medical evidence on their behalf due to failure to comply with the court orders dated December 16, 1991 and March 12, 1992.

(46) In or around February 1993, the case was settled prior to trial for [M], only, for the amount of $10,000.

(47) By letter dated February 16, 1993, to respondent, [Q], Esquire, an attorney for [I], confirmed that the case had settled for [M] in the amount of $10,000, but that due to [I's] cash flow problems, payment of the settle-

ment could not be made for 180 days after receipt of the order to satisfy and stipulation to withdraw appeal.

(a) She requested that respondent execute and return these closing papers in an enclosed self-addressed stamped envelope.

(b) Respondent failed to promptly execute and return the documents in order to consummate the settlement.

(48) By letter dated September 18, 1994, [R], [I] paralegal, informed respondent that he had not received the closing papers including the order to satisfy and the stipulation to withdraw appeal and that the 180 day waiting period for payment of the settlement amount could not begin until respondent sent those documents.

(a) Respondent failed to execute and return these documents to [I] in order to begin the waiting period for payment of the settlement funds.

### Charge V: The [S] Matter

(49) Respondent agreed to represent [T] in claims arising from her employment by [U] Corporation where in the course and scope of her employment she suffered injuries on November 26, 1989, when she slipped and fell on the property at [V] Hotel in [    ].

(50) [T] signed a "contingent fee agreement," dated December 31, 1990 [sic], authorizing respondent to represent her in her claims against the [V] Hotel.

(51) In or around December 1991, respondent settled [T's] claim against [V] Hotel for $16,250.

(a) Respondent received from [W] Insurance Company a settlement check dated December 11, 1991, made payable to "[T] and her attorney, [respondent], Esquire."

(b) On or around December 13, 1991, respondent endorsed and negotiated that check.

(52) Respondent failed to provide [T] with a written statement stating the outcome of the matter and showing the remittance to [T] and the method of its determination.

(53) In or around March 1994, [T] filed a writ of summons in a legal malpractice suit against respondent, individually, and the law firm of [respondent], in the [  ] Court of Common Pleas, [  ] County, March term, 1994, no. [  ].

(a) In or around September 1994, [T] filed a complaint in the above-captioned case alleging respondent was negligent in the handling of her case.

(b) On or around September 10, 1994, respondent was personally served with the complaint at his residence at [  ].

(54) By order dated November 9, 1994, a default judgment was entered against respondent for failing to timely answer [T's] complaint.

(a) Respondent failed to appear at an arbitration hearing to assess damages held in that case on November 18, 1994.

(b) On or around November 1994, respondent received notice of an arbitration award for $40,000, including compensatory and punitive damages.

(c) Respondent has failed to satisfy that judgment.

(55) In or around November 1994, [T] filed a statement of claim against respondent with the Supreme Court

of Pennsylvania, Pennsylvania Lawyers Fund for Client Security.

(a) By letters dated November 15 and 17, 1994, [X], executive director of the fund, advised respondent that [T] filed a claim against him alleging, inter alia, that he breached his fiduciary duty to her.

(b) By fax dated December 15, 1994, respondent responded to [X's] letter, therein denying all allegations against him and representing that he had paid [T] her settlement money in cash.

(c) On or around January 1, 1995, respondent telephoned [X] and verbally represented that [T] had received a cash distribution.

(56) On or around May 11, 1995, Judge [Y] presided at a fund hearing, at which time [S], Esquire, represented [T] and respondent represented himself.

(57) Respondent testified under oath:

(a) that [T] contacted him and requested that distribution be made to her in cash because she did not have a bank account; and

(b) [T] received the distribution in cash.

(58) The fund provided respondent with the opportunity to supplement the record, by June 1, 1995, with copies of the records of his escrow account and the receipt and distribution sheet in the case.

(59) Respondent did not provide the fund with the records of [T's] account funds supporting his position, and as a result, the fund awarded [T] $9,750, her portion of the settlement.

(60) By subpoena dated May 19, 1997, the Office of Disciplinary Counsel subpoenaed respondent's financial records regarding the [T] settlement.

(61) Respondent failed to produce the record of [T's] account funds to support his position to that office.

(62) Respondent paid expenses including employees' salaries out of his client escrow account.

(63) Respondent deposited client funds into his personal account and disbursed client funds from his personal account.

(64) There is no evidence that respondent misappropriated client funds.

(65) Respondent's history of discipline includes:[2]

(a) In February 1991, he received an informal admonition for violations involving lack of diligence, failure to communicate and engaging in conduct prejudicial to the administration of justice.

(b) In July 1992, respondent received a summary private reprimand for conduct in two cases involving incompetence, lack of diligence, failure to provide a written fee agreement, failure to communicate with a client, failure to provide a full accounting of funds to a client, and engaging in conduct prejudicial to the administration of justice.

(c) In June 1994, he again received a summary private reprimand for conduct in two cases involving the exact same infractions.

---

2. The private reprimands respondent received in 1991 and 1992 were incorrectly listed in the stipulation as two private reprimands on each of those dates when, in fact, only one reprimand was administered for violations relating to two separate clients.

(d) In August 1995, he received yet another private reprimand for conduct involving incompetence, lack of diligence and failure to communicate with his client.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct and Rules of Disciplinary Enforcement:

(1) R.P.C. 1.1—Failing to provide competent representation to a client;

(2) R.P.C. 1.3—Failing to act with reasonable diligence and promptness in representing a client;

(3) R.P.C. 1.4(a)—Failing to keep a client informed about the status of a matter and failing to promptly comply with reasonable requests for information;

(4) R.P.C. 1.4(b)—Failing to explain a matter to the extent necessary to permit a client to make informed decisions regarding the representation;

(5) R.P.C. 1.5(c)—Failing to provide a written contingent fee agreement which states the method by which the fee is to be determined;

(6) R.P.C. 1.15(a)—Failing to hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property;

(7) R.P.C. 1.15(b)—Failing to promptly deliver to a client or third person any funds or other property that the client or a third person is entitled to receive and, failing to promptly render a full accounting regarding such property, upon request by a client or third person;

(8) R.P.C. 8.4(d)—Engaging in conduct that is prejudicial to the administration of justice;

(9) Pa.R.D.E. 219(d)(1)(iii)—All persons required to pay an annual fee shall file with the administrative office a form which shall set forth the name of each financial institution in this Commonwealth in which the attorney on May 1 of the current year or at any time during the preceding 12 months held funds of a client of a third person subject to Rule 1.15 of the Rules of Professional conduct;

(10) Pa.R.D.E. 219(d)(1)(iv)—The attorney shall file a statement that the attorney is familiar and in compliance with Rule 1.15 of the Rules of Professional Conduct regarding the handling of funds and other property of clients and others;

(11) Pa.R.D.E. 219(d)(3)—Every attorney who has filed a registration statement shall notify the administrative office in writing of any change in the information previously submitted, including, office address and telephone number, within 30 days after such change.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for discipline filed against respondent charging him with numerous violations of the Rules of Professional Conduct and Rules of Disciplinary Enforcement. At the prehearing conference on February 13, 1998, the parties entered into a stipulation of facts, which was admitted as evidence at the disciplinary hearing on April 22, 1998. Respondent agreed on the record that the stipulation was an accurate recitation of the evidence against him. The Hearing Committee also had the benefit of testimony

from petitioner's witness, 23 exhibits, and respondent's testimony. Respondent offered no exhibits or witnesses.

The Hearing Committee found that respondent violated Rules of Professional Conduct 1.1, 1.3, 1.4(a), 1.4(b), 1.5(c), 1.15(a), 1.15(b), 8.4(d), and Rules of Disciplinary Enforcement 219(d)(1)(iii), 219(d)(1)(iv) and 219(d)(3). The committee recommended a period of suspension ranging from six months to one year. This recommendation was based on the misconduct as well as respondent's prior history of one informal admonition and three private reprimands. The committee considered respondent's testimony as to mitigation. Respondent testified that he was preoccupied with a very large criminal practice and most of the clients referred to in the petition for discipline were friends or personal acquaintances of his family who he represented on an informal basis. Respondent also explained that his office management skills were poor, thus contributing to his problems. The committee determined these defenses to be flimsy and found that respondent did not appear to comprehend the seriousness of the allegations against him.

The board's review of the record demonstrates that the Hearing Committee's findings of fact and conclusions of law are correct. The board also agrees with the Hearing Committee's conclusions that respondent's explanations are no excuse or justification for his misconduct. Respondent has practiced law since 1976. There is no reason he should not understand his responsibilities to his clients, both as to handling client monies and client cases. Respondent's explanation of poor office management skills is unacceptable. It equally defies logic that deference should be given to respondent because the affected clients were friends of respondent.

Furthermore, respondent has been on notice of problem areas in his practice. An informal admonition in 1991, and private reprimands in 1992, 1994 and 1995 should certainly have served as a warning to respondent to make changes in his law practice. Sadly, these prior encounters with the disciplinary system made no impression on respondent. A review of respondent's prior discipline indicates that respondent has been engaging in misconduct for a period in excess of ten years.[3] Respondent had the opportunity many times to change his ways and did not do so. As a direct result, respondent's clients suffered.

Respondent engaged in a pattern of client neglect, failure to handle cases diligently and promptly, and failure to communicate with clients concerning their cases. He commingled client funds and did not maintain complete records of fiduciary funds. He paid office expenses, including employee salaries, out of his client escrow account. Respondent also placed client funds into his personal account and disbursed client funds from his personal account. Respondent changed his office and telephone number and did not see fit to contact his clients and let them know this basic information. Respondent ran a slipshod practice. Furthermore, respondent's conduct since 1989 clearly points to his untrustworthiness, dishonesty, and utter disregard for his fiduciary duties. His clients deserved more competent representation than he was willing to give.

---

3. While the complaints sub judice were pending, respondent received a D.B.-7 letter dated February 10, 1998 and another dated March 4, 1998. Both resulted in recommendations for a private reprimand which was never administered because of the board's adjudication of the instant case. That reprimand was for violations of R.P.C. 1.3, 1.4(a), 1.4(b), 1.5(b) and 1.15(b).

The inescapable conclusion to be drawn from the record is that respondent is not fit to practice law. The board cannot allow respondent to remain available to the public as a fit and competent member of the legal profession. To do so would ignore the realities of this situation. To do so would also put the legal profession and the judiciary in the position of justifying intractable misconduct resulting from abhorrent office procedures and lack of discipline.

The recommendation of the Hearing Committee is too lenient to address the egregiousness of respondent's activities. The appropriate sanction in this matter to address the magnitude of the misconduct is disbarment. The board is cognizant that disbarment is an extreme measure used only in the most egregious cases, as it represents a termination of the license to practice law without a promise of its restoration in the future. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). Disbarment has been imposed in other cases similar to the case at bar. In *Office of Disciplinary Counsel v. Davis,* 532 Pa. 22, 614 A.2d 1116 (1992), Mr. Davis was disbarred for engaging in a pattern of neglect of client affairs and commingling of entrusted funds. He ran a practice consisting of low cost, high volume divorces. Mr. Davis attributed his problems to his sloppy office procedures and overwhelming case load. The Supreme Court found that this explanation did not justify his acts. The court also found Mr. Davis' extensive prior record of discipline compelling as to disbarment. The attorney in *Office of Disciplinary Counsel v. Knepp,* 497 Pa. 396, 441 A.2d 1197 (1982), was disbarred after he engaged in a four-year pattern of neglecting legal matters, charging excessive legal fees, making dishonest statements to

clients and failing to maintain proper records of client funds. Mr. Knepp, who had no prior record of discipline, ascribed his misconduct to financial difficulties arising from his extensive involvement in politics. The Supreme Court determined that such an excuse in no way mitigated the seriousness of the misconduct.

Having fully considered respondent's pattern of misconduct through the years and his failure to use his prior disciplinary encounters as an impetus to change his habits of practicing law, the board is persuaded that disbarment is the most appropriate sanction to protect the public and maintain the integrity of the legal system.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, [    ], be disbarred from the practice of law in the Commonwealth of Pennsylvania.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Elliott did not participate in the November 18, 1998 adjudication.

## ORDER

Upon consideration of the report and recommendations of the Disciplinary Board dated March 17, 1999, and following oral argument, it is hereby ordered that [respondent] be and he is hereby suspended from the Bar of this Commonwealth for a period of five years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.